Littleton, Judge,
delivered the opinion of the court:
The principal items, upon which the claim presented in this suit is based, are (1) the amount of $31,130.28, increased cost of labor due to defendant’s increases in wages paid for labor at the Charleston Navy Yard and increased cost for cement, sand, and stone over the price thereof at the date of the contract and over the price upon which plaintiff based his bid; (2) deduction of $6,000 from the contract price for elimination of waterproofing of basement against surface drainage after this work had- been performed in accordance with the contract; (3) deduction of $6,225 from the contract price as a result of the elimination of the furnishing and installation by plaintiff of freight entrance doors; and (4) deduction of $14,850 from the amount due under the contract as penalty for delay. Other items involving amounts claimed for alleged extra work, etc., will be hereinafter set forth.
Upon the issuance by the Navy Department of the advertisement for bids, accompanied by the specifications for the storehouse at Charleston, plaintiff, Arnold, who had been engaged in the building-construction business for a number of years, visited the site of the building for the purpose of *333 ascertaining the existing local conditions at the Charleston Navy Yard as to the acquisition and cost of materials, availability for his use of facilities and equipment at the yard, and the rentals therefor. After such investigation and the receipt of certain information with reference thereto from Public Works Officer Chambers in charge of the navy yard at that time, plaintiff concluded to submit his proposal for the construction of the building in question. During this investigation and the conference with Public Works Officer Chambers, the latter advised plaintiff of the yard rates for labor and furnished him a schedule of such yard rates; he also advised plaintiff of the yard rates for rental of yard equipment, furnishing a schedule thereof, and stated that the Government was in a position to supply him with such yard equipment and trackage facilities as might be needed for the work, such as traveling cranes for excavating, dump and flat cars, and gondola cars for handling materials, etc., in the yard and away from the site of the work. Material-men were, not permitted to deliver materials at the site of the building, all materials being delivered to the plaintiff at the wharf or on the railroad siding at the yard entrance and thereafter brought to the site of the work from the general delivery point by yard equipment. The public works officer also advised plaintiff that the Government had a contract for, and had on hand in the yard,- a supply of cement, sand, and stone; furnished plaintiff with the Government prices for the cement, sand, and stone, which prices were specified by plaintiff as the basis for his bid, and advised him that the yard would be glad to furnish these materials to him at the Government prices on his contract for the building. As a result of this investigation, and upon the information thus obtained, plaintiff submitted to the Bureau of Yards and Docks his proposal to construct the building, setting forth therein the terms and conditions upon which the amount thereof and the time for completion were based, as set forth in finding III. The Bureau of Yards and Docks accepted plaintiff’s proposal as made and made the terms and conditions thereof a part of the contract subsequently executed by incorporating the same in paragraph 8 of the contract.
*334 About October 3, 1917, plaintiff received for execution the formal contract as drawn by the Bureau of Yards and Docks. Prior to this date the plaintiff’s conference with Public Works Officer Smith, preparatory to commencement of the work, had taken place, as set forth in the findings. Labor was scarce and costs therefor were increasing due to war conditions. In order to guard against any misunderstanding with reference to the statement incorporated in the contract, that the amount of the contract price was based upon the present market price of labor, plaintiff returned the contract unsigned to the Chief of the Bureau of Yards and Docks for a more specific statement with reference to plaintiff’s right to reimbursement in the event of increases in wages for labor at the Charleston Navy Yard. The Bureau in a conference with plaintiff advised that the terms of his proposal had been made a part of the contract, thereby taking care of the matter of labor costs, and construed the contract as drawn, as providing, in paragraph 8, for an increase in the amount paid for labor in the event the Government increased the rates for labor in the Charleston Navy Yard. The contract was thereupon executed by plaintiff and the defendant.
We are of opinion that plaintiff’s written statement of September 4, 1917, which was incorporated in the contract, became a part of the contract terms and must be given effect. Charles Ward Engineering Works v. United States, 73 C.Cls. 557. That the terms and conditions of such statement formed a part of the contract clearly appears from a consideration of paragraph 191 of Specification no. 2469 and paragraphs first, seventh, and eighth of the contract. In specifying these terms and conditions plaintiff was complying with paragraph 191 of the specifications. The first paragraph of the formal contract provides for construction of the building complete in accordance with the specifications, as contemplated in item 1, paragraph 191 thereof, except as thereinafter modified, and paragraph 8 of the contract modified the specifications by making plaintiff’s statement a part of the contract. This further clearly appears, we think, from the seventh paragraph of the contract which *335 provides that the Government reserves the right to reduce the amount of $217,300 stated in the contract, or such other amount as might be payable thereunder, in such a manner as to obtain a credit based on the difference between the price for construction materials, i.e., cement, sand, and stone, stated by plaintiff in his proposal, and the cost at which such materials might be secured for plaintiff by the Government. Charles Ward Engineering Works v. United States, supra. In other words, if the Government had been able to secure these materials and furnish them to plaintiff at prices less than those specified by plaintiff in his statement accompanying his bid, the Government would have obtained a reduction in the contract price. If the terms of the statement made a part of paragraph 8 are not to be given effect, the incorporation thereof in the contract and the provision of paragraph 7 are purposeless.
In these circumstances plaintiff is entitled to recover the increased cost for labor independently of addendum no. 1 to the General Provisions, as to the construction of which by the Bureau we have some doubt, and the increased costs for cement, sand, and stone in excess of the prices upon which the amount stated in the contract was based. These amounts are: Labor, $27,763.71; cement, $1,588.89; sand and stone, $1,777.68. Counsel for defendant contend that if any amounts are allowable on account of these items, only the increased cost to February 8, 1918, the expiration date of the period of one hundred and twenty days for completion of the work, should be allowed because of plaintiff’s failure to complete the work on time. In view of the remission of the penalty deducted by the defendant, hereinafter mentioned, the total increased costs are allowable. The findings show that defendant was responsible for many of the delays.
The next two items involve claims for increased amounts of $735.94 and $780.65 under change orders for additional work in raising the basement floor level and installing additional toilets. Plaintiff submitted estimates of the cost of these changes and they were considered at the time by a board on changes under paragraph 17 of the General Provisions. Findings X and XII. The General Provisions, un *336 der which these items were considered and under which the amount to be allowed on account thereof was arrived at, provide that “ the increased cost shall be the estimated actual cost to the contractor at the time of the estimate ”, and that “ the contractor agrees and consents that the contract price thus increased or decreased shall be accepted in full satisfaction for all work done under the contract.” The evidence does not justify a finding that the action of the board on changes with respect to the amounts allowed on these items was so grossly erroneous as to imply bad faith. These additional amounts cannot, therefore, be. allowed.
The next item of the claim is for $1,013.83, being the cost of removing two concrete piers. These piers were not poured in accordance with the specification and no recovery can be had for the removal thereof.
Plaintiff next seeks to recover $3,111.21, representing the cost of driving additional piles in certain footings where the piles driven by the subcontractor with a hammer weighing less than 3,000 pounds had been cut off. Whether or not the required number of piles driven for these footings with the 2,370-pound hammer had a bearing capacity equal to that called for by the specification, plaintiff is in no position to recover this extra cost. The amount therefore is disallowed.
The next item relates to plaintiff’s claim for $3,183.50 arising from the deduction of $6,225 from the contract price as a result of a change order eliminating from the contract the furnishing and the installation by plaintiff of freight entrance doors, the facts concerning which are set forth in finding XIII. The record shows that the amount deducted and the manner in which it was arrived at were so grossly erroneous as to imply bad faith, and we have so found. The amount by which the contract price should have been reduced was $3,041.50 plus 10 percent, or $3,345.65. Plaintiff agreed to furnish and install the doors for $3,041.50 and he could and would have furnished and installed them for that amount had they not been omitted. The difference between the amount deducted and the amount deductible is $2,879.35. Plaintiff is entitled to recover the last-mentioned amount, and the same will be included in the judgment.
*337 The next item of plaintiff’s claim amounts to $6,000 deducted by the defendant from the amount due as a result of the issuance of a change order whereby the Bureau attempted to eliminate from the contract the matter of waterproofing of the basement walls and floor against surface drainage after this work had been performed. The contract required only that the basement be waterproofed against surface' drainage. The record shows that waterproofing against surface drainage was done strictly in accordance with all requirements, and that, when completed, the basement walls and basement floor were waterproof against such surface drainage, but that at times there was a slight seepage of water through the expansion joints of the basement floor, due to tide pressure. The basement floor as raised was not above high tide and was therefore subject at times to tide pressure. Before the basement floor was laid, plaintiff recommended that inasmuch as the same was being reinforced, which was done at his suggestion, the expansion joints be eliminated, but this recommendation was denied. This deduction from the amount due under the contract was wholly erroneous, and is shown by the record to have been so grossly erroneous as to imply bad faith. Plaintiff is entitled to recover $6,000 on this item.
Before the building was completed the public works officer demanded of plaintiff that he stop the leakage. The plaintiff, while insisting that it was due to tidal pressure and not to surface drainage, attempted to comply with directions of the Government officer, but without success. After expending $1,226.21 for labor and materials for this purpose, plaintiff refused to proceed further; thereupon the Government attempted to prevent the leakage by installing new felt membrane and pitch and laid an additional 3-inch concrete floor. This did not stop the leakage and, so far as the proof shows, it was never stopped. Plaintiff seeks to recover this amount of $1,226.21 so expended. This was an unwarranted expense to which plaintiff was put by the public works officer, but it was extra work not called for by the contract, and since no claim on account thereof was presented by plaintiff in accordance with paragraph 19 of the General Provisions no recovery can be had.
*338 The next item of the claim amounts to $14,850 deducted by defendant from the amount otherwise due under the contract as liquidated damages for failure to complete the building in one hundred and twenty days after delivery of the contract on October 9, 1917. The delays which resulted in the work not being completed within such period were mutual. Many of them were caused by the defendant. Plaintiff’s statement, made a part of the contract, modified the statement in the specifications that the Government would not be responsible for delays in delivery of materials and equipment. There was considerable delay on this account in addition to other delays caused by the defendant. Not one day’s extension of time was allowed. The contract work that plaintiff was engaged in necessitated some degree of cooperation upon the part of the public works officer. This meant not merely the performance by the public works officer of those obligations specifically enumerated in the contract, together with abstention from all interference with plaintiff’s work, but required enough activity on his part to at least make possible the advancement of the work at the agreed rate. The public works officer had something more to- do than simply observe the letter of the contract. It is apparent that he misconceived his relation to the contract work. Genuine cooperation on his part we find utterly lacking. His failure to permit inspection of piling at the wharf is an illustration of his misconception of the duties devolving upon him. Plaintiff, under yard rules, had to take delivery at the wharf instead of at the site. There is no good reason, as we read the record, why the public works officer could not have caused full, if not final, inspection to be made at the wharf, thus obviating the waste of time and money incident to carriage between site and wharf of piles which the inspectors saw fit to reject. This unbusiness-like method of carrying on was prevalent throughout the contract period. “ Where delays in the completion of the contract are caused, by both parties to the contract, and the period for completing the work has thereby been extended beyond the time originally fixed, the obligation to pay liquidated damages is annulled and cannot be revived, and any recovery for delays must be based on the actual loss sus *339 tained.” Standard Steel Car Co. v. United States, 67 C.Cls. 445; Levering & Garrigues Co. v. United States, 73 C.Cls. 566, 578; Bethlehem Steel Co. v. United States, 75 C.Cls. 845, 866; Sun, Shipbuilding Co. v. United States, 76 C.Cls. 154, 188; Camp Sales Corporation v. United States, 77 C.Cls. 659. The evidence in this case does not establish that the defendant suffered any actual damage or loss. For the purpose of determining the plaintiff’s obligation to pay damages for delay, it must be assumed that the period for completion was extended since the failure to extend it was an act of bad faith on the part of the defendant. It follows that the amount deducted as liquidated damages should be remitted. This item of the claim is therefore allowed.
The last item claimed is the amount of $4,725.24, balance admittedly due under the contract as set forth in the final voucher issued by the Bureau, but which plaintiff refused to accept as a full and final settlement of all claims under the contract. To this amount plaintiff contends there should be added $118.80, being 10 percent profit on extra reinforcing steel required by the Government and furnished by plaintiff. In this voucher the Bureau allowed plaintiff the extra cost of extra steel and also a profit on a portion thereof, but no profit was allowed on $108 of this extra cost which appears to have been due to a mistake. The correct am'ount allowable on this item of the claim is $10.80.
Finding XVIII shows a difference of $15 in favor of plaintiff, to which he is entitled under the contract, and the same is hereby allowed.
The total amount of the items of the claims which the court finds allowable is $59,610.67. Judgment in favor of plaintiff will accordingly be entered. It is so ordered'.
Whaley, Judge; Williams, Judge; Green, Judge; and Booth, Chief Justice, concur.
ON DEFENDANT’S MOTION FOR NEW TRIAL
Littleton, Judge,
delivered the opinion of the court:
Counsel for defendant submits a motion for a new trial requesting numerous amendments of the findings of fact. *340 The alleged errors merely involve a refusal of the court to find the facts in favor of the defendant, as originally requested by its counsel. The contentions made in the motion for a new trial are the same as those originally advanced and argued, and fully considered by the court. The record in the case is voluminous and in many respects the testimony is conflicting, but a fair and impartial consideration of all the record fully supports every finding made by the court and shows that the amendments now requested by defendant are not justified.
The errors of law assigned in the motion involve merely a refusal of the court to construe the contract as originally contended by the defendant, and the propositions made are fully answered and discussed in the original opinion. No useful purpose would bé served by a detailed discussion of the argument made in the motion for a new trial inasmuch as the propositions advanced have heretofore been fully and carefully considered by the court.
Only a word need be said with reference to (1) waterproofing the basement floor of the building in question; (2) deductions made by defendant and disallowed by the court in connection with the elimination from plaintiff’s contract of the installation by him of freight entrance doors; and (3) responsibility for delays.
The information on which the defendant seeks a new trial with reference to these items is not newly discovered evidence under the well-established rule governing such matters. The information offered as newly discovered evidence was at all times in possession of the defendant and by due diligence could have been discovered and submitted on the trial. Moreover, it is merely cumulative and some of it is not relevant nor material to a decision on the question with respect to which it is proposed to be offered. Most of the newly discovered evidence has been tendered with the motion for a new trial and has been examined by the court. If it were legally in evidence it would not change the conclusion reached by the court on the items to which it relates. It has long been the established rule of this court that motions for a new trial on the ground of newly discovered evidence will not be granted where due diligence on the part of the *341 defendant would have brought it to light at the first trial, and especially is this true where the alleged new evidence would not produce any change in the result. Garrison v. United States, 2 C.Cls. 382; Payan’s Motion, 15 C.Cls. 56. See, also, Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 425.
The alleged newly discovered evidence with reference to the waterproofing of the basement floor of the building consists of tide tables at Fort Sumter, Charleston, S.C., and the Atlantic Coast tide tables and weather maps. The question of the effect of the tide on seepage of water through the basement floor of the building after it had been constructed in accordance with the contract and specifications was considered on the original trial and much evidence was taken with respect thereto. Defendant introduced the tide tables at Charleston, S.C. We found as a fact that the leakage was caused by tide pressure. A reconsideration of the evidence of record on this point, together with the new evidence which the defendant proposes to offer, fully supports this conclusion. Counsel for defendant confuses tide water with tide pressure. It was not necessary that the water be salty, as defendant argues, to be the result of tide pressure. It was ground water forced up by tide pressure of additional tide water. The evidence shows that the water standing in the open excavation prior to the laying of the basement floor and prior to the time the floor was raised, in order to take it out of tide pressure, rose and fell with the tide. The tide tables now offered by defendant cover only a portion of the period involved, and even these tide tables show that the tide rose higher than the elevation of the basement floor as finally raised on at least four occasions for a period of from two to three days at a time.
The alleged newly discovered evidence relating to the elimination of the freight entrance doors from the contract by the defendant has no bearing upon the question presented, as pointed out by defendant’s counsel during the original trial when plaintiff questioned the Government witness with reference to what the defendant paid for the installation of such doors after they had been eliminated from the contract. *342 The important inquiry was whether the elimination by defendant of this item from plaintiff’s contract was justified. We found that the elimination was erroneous, and the only remaining point was the determination of the amount of plaintiff’s damages in accordance with contract provisions. This we did in finding XIII. We found such damage to be the difference between the cost at which plaintiff would have installed the doors plus 10 percent, less the amount deducted by defendant because of the elimination. The fact that the defendant may have actually paid more for the doors installed by it than plaintiff would have paid had they not been eliminated does not alter the result, except to demonstrate that the item should not have been eliminated from the contract.
. The remaining alleged newly discovered evidence presents a novel method of proving responsibility for delay. We have been unable to find any decision where the court has been called upon to predicate a decision upon such an hypothesis of unrelated facts. Under this assignment of “ newly discovered evidence ” defendant wishes to offer certain contracts that plaintiff had with the defendant in each of which it is claimed he was charged with liquidated damages. It is not contended that such deductions ever received judicial approval, even if, by the greatest stretch of the rules of evidence, such collateral matters could be inquired into for the purpose of determining whether the liquidated damages charged by the Bureau in the case at bar, involving a different contract performed under different conditions and circumstances and at a different location, were proper. The general rule is that the law will not consider evidence that a person has done a certain act at a particular time as probative of a contention that he has done a similar act at another time, and this case does not come within any exception thereto. If the deductions of penalties for delay made under other contracts, concerning which defendant now proposes to inquire into in the case at bar, were based on the same causes that brought about the deduction here, it would seem that plaintiff should have availed himself of his legal remedy at the time.
*343 The motion for a new trial and amendment of the findings must be overruled, and it is so ordered.
Whaley, Judge; Williams, Judge; Green, Judge; and Booth, Chief Justice, concur.