Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff, a lieutenant commander on the retired list of the Navy, sues herein to recover his pay as such from February 22, 1921, to July 27, 1921. The case is restricted to a single issue, and while necessary to state the facts, it in no- *442 Avise iirvobves a judicial determination as to whether under them the action taken by the Navy Department was justified. The parties concede the correctness of the above statement and present the case' under the one contention, i. e., does jurisdiction reside in a succeeding Secretary of the Navy to reopen and allow a claim for pay which his predecessor in office has theretofore denied ?
Lieutenant Commander Haas, while on duty on the U. S. S. Monocacy, was compelled to make a trip down the upper Yangtze Biver in China, and in accomplishing the same the open boats utilized exposed him to cold rains and prevailing wet Aveather. His physical condition immediately thereafter Avas such that he Avas recommended for transfer to the Naval Hospital, Mare Island, California, for treatment. On February 22, 1921, he Avas admitted to the hospital. A board of medical survey convened in China 'reported that his disability had its origin in line of duty due to the recounted exposure and as not attributable to his own misconduct. This report was duly approved by the commander of the Yangtze Patrol, and afterwards on January 17, 1921, approved by the commander in chief of the IT. S. Asiatic Fleet. Subsequent to the plaintiff’s arrival at the-. Mare Island Hospital the medical officer there disagreed with the preceding report and after a technical definition of plaintiff’s disabilities found that they were due to his own misconduct. The plaintiff on March 11, 1921, protested against the report.
Plaintiff was then transferred to the League Island Hospital in Philadelphia, and a board of medical survey on April 12, 1921, confirmed the findings of the Mare Island report which was thereafter approA'ed by the commandant of the Philadelphia Navy Yard. This last report was then forwarded to the Bureau of Medicine and Surgery, Navy Department, and thereafter approved by the Surgeon General, whereupon on July 22, 1921, the Acting Secretary of the Navy approved the report and the plaintiff has not received the pay claimed for herein under the folloAving statutes (39 Stat. 580, as amended, 40 Stat. 717) :
“ Hereafter no officer or enlisted man in the Navy or Marine Corps in active service who shall be absent from duty on account of injury, sickness, or disease resulting from his *443 own intemperate use of drugs or alcoholic liquors, or other misconduct, shall receive pay for the period of such absence, the time so absent and the cause thereof to be ascertained under such procedure and regulations as may be prescribed by the Secretary of the Navy.” > r
The plaintilf, being dissatisfied with the rulings adverse to his right to pay, appealed in writing to the senior member of the medical survey at Shanghaij China, and from him received the statement we have incorporated in Finding IY. This statement was through the Surgeon General transmitted to the Secretary of the Navy by letter September 21, 1923, with a recommendation that, in view of this new evidence, the plaintiff’s case should be reopened and the previous ruling set aside and the records corrected by a finding disclosing the plaintiff’s disabilities as incurred in line of duty, in nowise due to his own misconduct. The matter then went before the Judge Advocate General of the Navy, and this official after having secured the record in its entirety, from every source, reviewed the facts and forwarded to the Secretary of the Navy the following recommendation:
“ The medical question presented having thus been determined in favor of line of duty, the law relative thereto requires that said disability be held to have originated in the line of duty and not due to his own misconduct — ”
which in turn was approved by the Secretary on July 25, 1924.
The plaintiff at first received his pay and allowances for the period involved, but the same were thereafter checked against him on the theory that the action of the Acting Secretary of the Navy on July 22, 1921, concluded the plaintiff’s rights, and that the subsequent reversal of said action was not within the authority of the succeeding Secretary.
The cases cited by the defendant do not foreclose the action taken by the Secretary of the Navy on July 25, 1924. The precedents relied upon point out the existence of the right to reopen and review the action of a predecessor in office upon manifest error, new evidence, fraud, and mathematical miscalculations. Rollins v. United States, 23 C. Cls. 106, 123. *444 In 9 Comp. Dec. 108, cited by both parties to the case, it is said:
“ It is a well-established rule of law that an officer who is authorized to allow or reject claims is not authorized to allow a claim which has been rejected by his predecessor except for mistakes of fact or upon the production of material evidence subsequently discovered.”
The plaintiff cites a number of cases to sustain the right of review in the event of obvious mistakes or upon new evidence. We think it unnecessary to quote from or cite the same. Attorney General Bates in 10 Op. Atty. Gen. 62 used this significant language:
“ I know of no statute which prohibits the head of a department from examining and allowing a claim which has been before rejected by his predecessor; even where no new evidence is adduced, and without a statutory prohibition, I presume that he would have the power to do so. I do not think that the decision of the'head of a department upon a claim before him has, upon the rights of claimants, the final and irrevocable effect of the judgment of a court of justice. Before giving them such effect, it would be necessary to introduce the care and precision in commencing and conducting proceedings, strictness in the admission of evidence, fullness of argument, and facility of appeal to the tribunal of last resort, with which, in courts- of justice, the law surrounds suitors. In the administration of the executive departments, as a general rule these forms are neither appropriate nor possible, since the duties are ministerial, rather than judicial.”
Aside from the fact that the action required of the executive officer in this case was a determination of facts, which it is true would result in the disallowance of the officer’s pay, it is not in the strict sense of the term the submission and determination of a claim against the United States. What the different officials of the Navy did was a duty imposed by law. It was one the officials could not escape and one which involved the plaintiff’s status from a standpoint of fact. Here we have the conflicting opinions of a naval board upon practically the same record. The plaintiff presents new evidence of sufficient probative effect to at least raise' a convincing and reasonable doubt as to the accuracy of the last findings and reports; or, what is of' more importance, the substantive and true cause of plaintiff’s physical disabilities, a new and *445 additional record concurred in by at least one important official who had concurred' in the former adverse finding. The Secretary of the Navy in 1924, believing that an injustice had'been done the plaintiff, after reviewing the new record in its entirety, approved a report reversing the former ruling of his predecessor. This we" think under the decisions he was clearly authorized to do. ■
We think the plaintiff is entitled to a judgment for the sum of $1,812.72. Judgment for that amount is awarded. It is so ordered.
Sinnott, Judge; Green, Judge; Moss, Judge; and Graham, Judge, concur.