## SPENCER v. UNITED STATES.
### No. 49438.

United States Court of Claims.

Feb. 5, 1952.

Littleton, J., dissented.

⊙➝2

The defendant's motion for a new trial is granted. The findings of fact, conclusion of law and opinions entered October 2, 1951, are vacated and withdrawn, and new findings of fact, conclusion of law and opinions are this day entered.

Thomas H. King, Washington, D. C., for the plaintiff.

Paris T. Houston, Washington, D. C., with whom was Holmes Baldridge, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff sues to recover disability retirement pay for the period between October 4, 1944, and December 31, 1949, as a Reserve Army officer on the ground that

2. Irwin & Leighton v. United States, 115 Ct.Cl. 18.

he was certified by the Secretary of War to the Veterans' Administration for disability retirement pay. Plaintiff contends that this certification was a final order by the Secretary of War and could be revoked only upon a showing of fraud, which was not present in his case. It is the Government's contention that the retirement orders of a Reserve officer are not final orders and that certain medical reports of the Veterans' Administration hereinafter referred to constituted sufficient new evidence to justify the reopening of the proceedings.

Plaintiff had been commissioned a Captain in the Organized Reserve Corps of the Army of the United States during World War I, and served various periods of active duty from 1918 to 1940 as part of his Reserve training activities.

On August 14, 1940, he was given a physical examination by Army medical officers and was found to be suffering from arterial hypertension, or high blood pressure, which, he was advised by these medical officers could be corrected within one year. A subsequent Army medical examination in October 1940, found that this disqualification had been removed.

On December 11, 1940, plaintiff submitted to a physical examination by Veterans' Administration physicians, and that examination showed that he had arterial hypertension. At this time plaintiff stated to the medical examiner that he had had high blood pressure. However, on December 13, 1940, plaintiff was again examined by Army physicians, and on this occasion was found to be fit for active duty. Plaintiff entered on active duty as a Lieutenant Colonel on March 24, 1941, at which time he was given a Final Type physical examination and found fit for extended active duty.

On June 3, 1944, plaintiff, while in active service, entered a military hospital suffering from physical exhaustion. Shortly thereafter he was ordered before an Army Retiring Board for a hearing. The Board, on the basis of plaintiff's statements that he had not had any trouble before being called to active service, and on the basis of extensive medical reports before it, entered findings that plaintiff was suffering from arterial hypertension which permanently incapacitated him, and that the incapacity was an incident of the service. Subsequent proceedings before the same Retiring Board in September 1944 resulted in the same conclusions.

These findings were approved by the Secretary of War on October 30, 1944, who on January 12, 1945, officially certified plaintiff to the Veterans' Administration to receive retirement pay in the amount of $362.50 monthly, effective from October 4, 1944.

On March 19, 1945, this certification was revoked by the Secretary of War and plaintiff was notified that his records were being returned to the Army Retiring Board for further proceedings in view of additional evidence consisting of the report of plaintiff's physical examination by the Veterans' Administration on December 11, 1940. The reconvened Retiring Board, after reviewing plaintiff's medical records, including the report of the Veterans' Administration examination, again found, as had the first Retiring Board, that although plaintiff had suffered from hypertension prior to his acceptance for active service in 1941, that condition had been sufficiently alleviated to warrant his acceptance for extended active duty in 1941, and that the hypertension which caused his disability in 1944, was a new condition which originated while plaintiff was on active duty. These findings were disapproved by the Secretary of War.

Plaintiff then requested a review by the Disability Review Board of the action of the Secretary of War. This Board in turn reversed the findings of the retiring boards and found that plaintiff's condition had originated prior to entry on active duty, hence was not an incident of the service.

It is plaintiff's contention that when officials of the War Department, acting for the President, have made a determination that an officer is entitled to retirement and retirement pay, such decision is final and binding, leaving the officials *functus officio,* and that the proceedings can be reopened and reversed later only upon a showing of

fraud, or such gross error as would amount to fraud.

In 1939, Congress enacted legislation, the general purpose and intent of which were to place Reserve officers on a par with Regular Army officers as to retirement rights. Senate Report No. 80, p. 7, 76th Congress, 1st Session; Senate Report No. 1947, p. 7, 76th Congress, 3d Session. It is provided, so far as here material, in section 5 of the Act of April 3, 1939, 53 Stat. 557, as amended by the Act of December 10, 1941, 55 Stat. 796, 10 U.S.C.A. § 456, that: "All officers * * * of the Army of the United States, other than the officers * * * of the Regular Army, if called or ordered into the active military service by the Federal Government for extended military service in excess of thirty days, * * * and who suffer disability or death in line of duty from disease or injury while so employed shall be deemed to have been in the active military service during such period and shall be in all respects entitled to receive the same pensions, compensation, retirement pay, and hospital benefits as are now or may hereafter be provided by law or regulation for officers * * * of corresponding grades and length of service of the Regular Army. * * *"

The Act of September 26, 1941, 55 Stat. 733, 10 U.S.C.A. § 456a contains similar provisions.[1]

As these enactments were silent as to the method of administration of the retirement benefits provided thereby, Congress further provided in section 2 of the Act of September 26, 1941, supra, 55 Stat. 734, 38 U.S.C.A. § 12, that: "The duties, powers, and functions incident to the administration and payment of the benefits provided in section 456a of Title 10 are hereby vested in the Veterans' Administration: *Provided,* That in the administration of the retirement pay provisions of the said statute the determination of all questions of eligibility for the benefits thereof, including all questions of law and fact relating to such eligibility, shall be made by the Secretary of War, or by someone designated by him in the War Department, in the manner, and in accordance with the standards, provided by law or regulations for Regular Army personnel * * *."[2]

Pursuant to the rights created by these statutes, plaintiff was initially granted the proper procedure before retiring boards. This procedure, detailed in R.S. 1246–1250, 1253, 10 U.S.C.A. §§ 961–966, provides that the Secretary of War, under the President's direction, shall create Army retiring boards to conduct hearings and inquire into the disability of any officer, enter findings as to its cause, and transmit these findings to the Secretary of War for the action of the President. The procedure is the same whether an officer is a member of the Regular Army or of the Organized Reserves. Army Regulations 35–3420 of March 10, 1943, and 605–250 § 1 of March 28, 1944, in effect at the time plaintiff went before a retiring board, make no distinction between these classes of officers.[3] Army Regulations have the force

---

1. "Reserve officers, Army of the United States, who were called or ordered into active military service by the Federal Government for extended military service in excess of thirty days on or subsequent to February 28, 1925, * * * and who are now disabled from disease or injury contracted or received in line of duty while so employed, shall be deemed to have been in the active military service during such period and shall be in all respects entitled to receive the same retirement pay and hospital benefits as are now or may hereafter be provided by law or regulation for officers of corresponding grades and length of service of the Regular Army." 10 U.S.C.A. §

456a. See also AR 35–3420, of March 10, 1943.

2. This enactment was a codification of similar provisions contained in Executive Order 8099, promulgated April 28, 1939, as amended by Executive Order 8461, promulgated June 28, 1940 (C. F. R., Cum.Supp., Title 3, pp. 482 and 680).

3. AR 605–250 § 1:
The following cases shall be referred to Army retiring boards for disposition under the provisions of these regulations:
(a) Cases where an officer may be considered physically or mentally incapacitated for active service regardless of

of law. Hironimus v. Durant, 4 Cir., 168 F.2d 288, certiorari denied, 335 U.S. 818, 69 S.Ct. 40, 93 L.Ed. 373; Gratiot v. United States, 4 How. 80, 11 L.Ed. 884. Section 36b of AR 605–250, supra, the proper interpretation of which is the main issue in this case specifically states that, "Orders for retirement, having become effective in any case, cannot be revoked or amended."

The Government urges that Section 36b applies only to Regular Army Officers. There is reason for that interpretation. Reserve officers, following retirement for service-connected disability, merely revert to inactive status with the right to receive retirement pay from the Veterans' Administration, while Regular Army retired officers are carried on a retired list and paid by the Army. When an officer of the Regular Army is retired a vacancy is created, and the President may and ordinarily does appoint a successor whose appointment must be confirmed by the Senate. A new appointment of the retired officer would similarly require confirmation by the Senate. Great confusion would be caused if it were permissible, by Executive action, to revoke the retirement order of a Regular Army officer. But in the case of a Reserve officer, his status may be changed by Executive action only, by recall from inactive duty to active service.

The application of Section 36b of AR 605–250, to Regular Army officers, thus making it impossible to later correct a mistake made in connection with their retirement cannot except in extraordinary circumstances, prejudice either the officer or the Government. Whether the disability which requires the retirement of a Regular Army officer is, or is not, service-connected, he is entitled to retired pay. He has made the Army his career and, when he is no longer able to actively follow that career, he is entitled to be maintained by the Army. But a Reserve officer is entitled to retired pay only if the disability for which he is retired is service-connected. It may, then, be of vital consequence either to such an officer, or to the Government, that a mistake once made by a Retiring Board should not irrevocably and permanently fix the rights of the officer and the obligations of the Government.

The doctrine that a decision, though made by mistake, is irrevocable and creates a continuing obligation to pay in monthly installments throughout the remainder of a man's life an amount of money which may become very large indeed, is strong doctrine. It would carry over into the administrative procedure of the military establishment the rule of *res adjudicata* of court procedure, as it might apply to an installment contract for rent or for periodic interest on a bond. It would be a mistake to so harden the arteries of administrative procedure. The doctrine would arise to plague deserving officers who, unable to persuade their Retirement Boards or Appeal Boards that their disabilities were service-connected, would find that their later attempts to do so, which might otherwise have been successful, were foiled by the crytic statement that these Boards, were, as to them, *functus officio*.

The decision urged by the plaintiff, then, not being required by the legislation the purpose of which was, in general, to equalize the status of Regular Army officers and Reserve officers, and not being in accord with sound policy, should not be made.

This opinion has not discussed the evidence as to whether the plaintiff's disability was or was not service-connected. The statutes lodge that decision in the military establishment, and, in the circumstances here present no judicial reversal of its decision is warranted.

In the case of William J. Henry v. George C. Marshall,[4] decided by Judge Letts of the District Court of the United States for the

---

whether such incapacity is or is not an incident of the service * * *.

AR 605–250 § 11:

A retiring board may inquire into and determine the facts touching the nature and occasion of the disability of any officer * * *, and shall have such power of a court-martial and of a court of inquiry as may be necessary for that purpose.

4. No opinion for publication.

District of Columbia, on June 15, 1951, the decision was in accord with the conclusions here expressed.

The plaintiff's petition will be dismissed. It is so ordered.

WHITAKER, Judge, concurs.

JONES, Chief Judge (concurring).

I concur in the foregoing result on the ground that the newly discovered evidence was sufficient to justify a reversal of the previous action that had been taken; at least that a court is not justified, in the circumstances of this case, in holding that such action was an abuse of the discretion that had been lodged in such officer.

LITTLETON, Judge (dissenting).

This case is now before the court on defendant's motion to set aside the decision and judgment entered in favor of plaintiff on October 2, 1951, and to grant a new trial. Defendant asserts, as it argued on the original trial, that section 36b of Army Regulations 605–250, March 28, 1944, which makes orders for retirement irrevocable, applies only to Regular Army officers, hence the court erred in applying this section to Reserve officers, thereby making plaintiff's original certification by the War Department to the Veterans' Administration for retirement pay conclusive; that the medical reports submitted to the War Department by the Veterans' Administration were sufficient new evidence to permit revocation of the certification for retirement pay, and that the court erred in finding such reports to be insufficient new evidence.

The arguments and authorities presented to show that the court erred are, therefore, precisely the same as those asserted by defendant in its original brief and which were rejected by a majority of the court in the first decision.

The only new matter now presented for the court's consideration is an allegedly contrary decision of the United States District Court for the District of Columbia

in William J. Henry v. George C. Marshall, et al.,[1] Civil Action 49248, June 15, 1951, which decision we believe involves a related question, and which is in accord with the views hereinafter stated.

A new trial should not be granted where it is apparent that its result will be simply to permit a reargument on the facts and the law as they were on the former trial. We would be guided by the succinct statement in Roche v. District of Columbia, 18 Ct.Cl. 289, 290, that: "The reargument of cases cannot be permitted upon the sole ground that one side or the other is dissatisfied with the conclusion reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged, with no more satisfactory results, as there would be a losing party in the end."

As the original opinion pointed out, Congress, in 1939,[2] and 1941,[3] enacted legislation, which equalized the rights of Reserve and Regular Army officers for many purposes, especially their right to receive retirement pay. The method of administering these retirement benefits was provided for by Congress in section 2 of the Act of September 26, 1941, 55 Stat. 734, 38 U.S. C.A. § 12, as follows: "The duties, powers; and functions incident to the administration and payment of the benefits provided in section 456a of Title 10 are hereby vested in the Veterans' Administration: *Provided,* That in the administration of the retirement pay provisions of the said statute the determination of all questions of eligibility for the benefits thereof, including all questions of law and fact relating to such eligibility, shall be made by the Secretary of War, or by someone designated by him in the War Department, in the manner, *and in accordance with the standards, provided by law or regulations for Regular Army personnel * * *.*" [Emphasis added.]

Pursuant to these statutory authorizations, Army Regulation 605–250, entitled "Army Retiring Boards," was promulgated on March 28, 1944, and was in effect at the

1. No opinion for publication.

2. 53 Stat. 557, as amended by 55 Stat. 796, 10 U.S.C.A. § 456.

3. 55 Stat. 733, 10 U.S.C.A. § 456a.

time plaintiff went before a retiring board. This regulation, which has the force of law, makes no distinction as to its *general* application between Reserve officers and Regular Army officers. Section 1, entitled "Jurisdiction of Army Retiring Boards," provided in part as follows:

"The following cases shall be referred to Army retiring boards for disposition under the provisions of these regulations:

"(a) Cases where an officer may be considered physically or mentally incapacitated for active service regardless of whether such incapacity is or is not an incident of the service. * * *"

Section 11, entitled "General Duties and Powers of Board," provides in part as follows: "(a) A retiring board may inquire into and determine the facts concerning the nature and occasion of the disability of any officer * * * and shall have such powers of a court-martial and of a court of inquiry as may be necessary for that purpose."

Other sections of AR 605–250 are by necessity partially limited in their application to Regular Army officers. As defendant contends, the portions of sections 34b and 34c which provide that an officer shall be placed on the "list of retired officers", or shall be "wholly retired from the service," relate only to Regular Army officers. However, this language had its origin in the Revised Statutes, sections 1245, 1251, and 1252, 10 U.S.C.A. §§ 931, 933, and 934, which enactments related only to Regular Army officers. The remaining portions of sections 34b and 34c are made equally applicable to Reserve officers by virtue of the provisions of the Act of September 26, 1941, 55 Stat. 734, set forth above.

Defendant insists, however, that section 36b of this regulation which states that, "Orders for retirement, having become effective in any case, cannot be revoked or amended," is also limited in its application to Regular Army officers only. I am unable to perceive any basis for such a distinction in the wording of the regulation as a whole, which provides that the boards may inquire into the disability of *any* officer, or any sound reason why there should be any distinction between Regular Army officers and Reserve officers. Nor do I find any basis for such distinction in the statute under which the regulation was made. While it is true that following retirement for service-connected disability, Reserve officers merely revert to an inactive status with the right to retirement pay from the Veterans' Administration, whereas Regular Army retired officers, who are retired, are carried on a retired list and paid by the Army, this represents the only differentiation in treatment afforded them. The purpose and intent of the legislation pertaining to retirement are to treat them equally, and any other interpretation would deprive the applicable words of the statutes and the regulations of their plain meaning. The provisions of retirement statutes affecting service personnel were enacted from motives of public policy and should not be narrowly construed. Lemly v. United States, 75 F.Supp. 248, 109 Ct.Cl. 760, 767; Hornblass v. United States, 93 Ct.Cl. 148, 156.

There are additional reasons for applying AR 605–250 to Reserve officers in all respects, except where the language of certain sections is manifestly restricted to Regular Army officers. All the various rights which were granted to plaintiff during the course of the retirement board proceedings, such as the right to be present and testify before the board, the right to counsel, and the right to have a copy of the medical report, have their foundation in and are created by AR 605–250. The findings and report of the retiring board at Crile General Hospital were likewise in the form prescribed only by AR 605–250. I think this demonstrates that the Army itself applied this regulation to Reserve officers in all possible respects, and I am further convinced that, pursuant to § 36b, the War Department order certifying plaintiff's right to retirement pay should be as final as the retirement orders of a Regular Army officer, in the absence of certain conditions, which will be hereinafter discussed.

Further support for this conclusion is found in the currently applicable Army Regulation, AR 605–246, promulgated on May 19, 1949, as a successor to AR 605–250. While this regulation cannot control plaintiff's case, it is important in that it was

merely a clarification of and was issued pursuant to exactly the same statutes as its predecessor, and therefore cannot create greater rights on behalf of Reserve officers than AR 605–250. Section 1 of the new regulation deals with jurisdiction of Retiring Boards, and provides in part as follows: "(b) The provisions of *all* these regulations apply to all commissioned officers and warrant officers of the Army and Air Forces, *regardless of component,* including female officers." [Emphasis added.]

Section 11 remains the same as set forth above in AR 605–250. Section 37, which is comparable to section 34 of AR 605–250, has been restated in greater detail with separate subsections covering the rights of Regular Army and Reserve officers. It provides as follows:

"(a) When the board finds that an officer of the Regular component is incapacitated for active service, and that his incapacity is not the result of an incident of service, and its decision is approved by the president, the officer shall be retired from active service, or wholly retired from the service, as the president may determine.

"(b) When the board finds that an officer of the Regular component is incapacitated for active service, and that his incapacity is the result of an incident of the service, and its decision is approved, the officer shall be retired from the service.

"(c) When the board finds that an officer, other than an officer of the Regular component, is incapacitated for active service and such finding is approved, the officer will be relieved from active duty and revert to an inactive status. Upon reverting to an inactive status, the officer concerned will be transferred to the Inactive Reserve or Honorary Reserve of the Officer's Reserve Corps; discharged from a commission in the National Guard of the United States; retain an inactive commission in the Army or Air Force of the United States for the duration of the national emergency resulting from World War II plus six months; or be discharged from his commission or commissions, as appropriate and determined by the Department concerned. Officers who are found to be permanently incapacitated, the result of an incident of service, which finding is approved, will,

after relief from active duty, be certified to the Administrator of Veteran Affairs for retirement pay benefits under the act of 3 April 1939. This action will be taken by The Adjutant General, in cases of personnel of the Army, and by the Deputy Chief of Staff, Personnel, in cases of Air Force personnel. * * *"

Section 38b, the successor to section 36b of AR 605–250, has likewise been revised and is now coordinated with section 37c to provide: "(b) Executed orders for retirement or relief from active duty cannot be revoked or amended." The words "relief from active duty," as used in sections 37c and 38b, relate only to Reserve officers, thus spelling out in more technically correct language than was used in AR 605–250, the application of the doctrine of finality to retirement proceedings involving members of the Reserve component.

I think the only reasonable conclusion to be drawn from a comparison of the two regulations, and from the fact that both have identical statutory foundations, is that AR 605–246 represents a clarification and re-expression of the *same* rights which Reserve officers possessed under AR 605–250, and that section 36b of AR 605–250 was intended to embrace Reserve officers within its application. Despite the objection made to the imposition of what is termed a rule of *res adjudicata* to retirement proceedings, the finality of a retirement order was created by a regulation issued by proper authority for application to Army officers, Regular and Reserve, and when, as here, such a regulation is reasonable, and is authorized by law, it should be given full force and effect by the court. The necessity of such a provision is clear. In its absence deserving officers would find their retirement orders subject to periodic re-examination upon changes in Executive or Army administrations, or upon decreases in appropriations. While this rule may work occasional hardships, its benefits far outweigh its detrimental results.

The Army, in promulgating section 36b, has simply given recognition to a rule already well established in the law. Ordinarily, where a government official is empowered by statute to do a particular act which would otherwise be outside the

scope of his authority, such power, once exercised, is deemed exhausted and cannot be exercised again. The person possessing such a power is thereafter *functus officio*. Daniel E. Sickles et al., 19 Op. Atty.Gen. 209, Ex parte Randolph, Fed. Cas.No.11,558, 2 Brock. 473, 474.

Other orders by government officials acting in a quasi-judicial capacity, and based on similar proceedings, have been regarded as final and binding on the Government even in the absence of a regulation such as § 36b of AR 605–250, supra. In United States v. Burchard, 125 U.S. 176, 179, 8 S.Ct. 832, 31 L.Ed. 662, the findings of a retiring board that Burchard was incapacitated for further active service, but not as the result of an incident of the service, were approved by the President. Later the Secretary of Navy became satisfied, upon a re-examination of the findings and a re-valuation of the evidence, that the incapacity was actually the result of causes incident to the service. There is no indication that the attempted change of decision was based on newly discovered evidence, gross mistake or fraud. It was held that under the circumstances of that case, neither the Secretary of Navy nor the President could then change the findings. Once they had been approved, they were no longer open to review because the President's action on the findings was equivalent to the judgment of an appropriate tribunal which could not be disturbed. Cf. Potts v. United States, 125 U.S. 173, 8 S.Ct. 830, 31 L.Ed. 661. In McBlair v. United States, 19 Ct.Cl. 528, 538, a similar situation was presented. A retiring board found that McBlair did not have a service-connected disability and the President approved the findings. Subsequently the President reviewed the findings and directed that the officer be placed on the retired list. The order showed that the President had simply changed his mind as to the sufficiency of the existing evidence. The court stated that the President,

" * * * had a power to exercise in the disposition of the report, and his action thereon, made in law, the complete exercise of the full measure of authority provided by the statute. It is not a *continuing* power but is performed to the extent of its existence by the *one* act of the President * *.

"If the President has the right to change his approval into disapproval, when does the right cease? * * * "

In Runkle v. United States, 19 Ct.Cl. 396, 418, the court pointed out that any conclusion that the President and his executive officers possessed continuing power when acting in a quasi-judicial capacity would be ridiculous. For example, a contrary conclusion would mean that the President might revoke and withdraw his approval of a bill passed by Congress. Likewise, he would be able to restore an officer's commission without a new appointment confirmed by the Senate, which power was expressly denied him in Corson v. United States, 17 Ct.Cl. 344, 349. Cases where the President or his executive officers are performing nonjudicial functions are to be distinguished. Cf. Wisconsin Central Railroad v. United States, 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399.

The question raised here has been before the Judge Advocate General of the Army for decision on several occasions, and the opinions rendered by him have consistently held that the Secretary of War *may* rescind approval of a retiring board's findings and reopen the case in all circumstances. SPJGA 1942, 4222, 14 Sept. 1942; id. 1942/5925, 16 Dec. 1942; id. 1943/16746, 19 Nov. 1943; id. 1943/16908, 19 Nov. 1943. However, no legal reasons are given to justify these decisions. They are, as their title indicates, merely opinions. Their foundation lies in an argument which is also emphasized by defendant, namely, that to regard retirement orders as final orders would encourage officers to suppress facts before retiring boards short of fraud, and that it would also preclude consideration by the Secretary of War or retiring boards of any substantial new evidence which might reasonably have resulted in a contrary finding.

I do not believe such to be the case. Previous decisions of this court have dispelled all such imaginary fears as unwarranted. In Haas v. United States, 67 Ct.Cl. 437, 443, the plaintiff (Haas) had been denied retired pay by a retiring board on

the ground that his disabilities were due to his own misconduct. Plaintiff thereafter secured additional evidence, not considered by the original board in making its findings. This court recognized the right of the Secretary of Navy to reconsider the acts of a predecessor in office upon (1) a showing of manifest error, (2) subsequently discovered material evidence of sufficient probative value to raise a reasonable doubt as to the prior findings, (3) fraud, and (4) mathematical miscalculations. Cf. Rollins & Presbrey v. United States, 23 Ct.Cl. 106, 123. In addition, we have recognized the right of the Secretary of Navy to reopen a proceeding where the action taken was erroneous and not in accordance with law. Cook v. United States, 101 Ct.Cl. 782. The argument made by defendant that to treat retirement orders as final would result in fraud and the suppression of evidence, and prevent the proper official from correcting his errors, was also raised in the McBlair case, supra, but was dismissed with the following language:

"But it is insisted that the President must of necessity have control of the record, in order to correct mistakes which he might have made in acting without being sufficiently advised, and thereby insure to parties affected, a guarantee that injustice will not be done by hasty and inconsiderate action.

"Courts, or officers, whether acting judicially or in a mere ministerial capacity, so long as they retain jurisdiction of a subject-matter, have complete control, within the purview of their power, to deal with it, as their discretion or duty may dictate; but when it passes beyond the line of official authority, either by the duty intrusted having been performed, or by the limitation of time, then the power ceases and the mode of execution becomes fixed and irrevocable in law.

"It is a principle familiar to all, that a court once adjourned, ceases to have control of the substance of its decrees and judgment; and while matters of form may be corrected, matters of substance become crystallized into the force of judicial verity."

The report of the Veterans' Administration as to plaintiff's condition in December 1940 (finding 5) for several reasons, clearly, is not sufficient newly discovered material evidence to justify reopening the case. Under existing Army Regulations[4] and under the decision in Robertson v. Chambers, 341 U.S. 37, 71 S.Ct. 547, 95 L.Ed. 726, the report would have been proper evidence for the board to have considered during the initial hearings.[5] This report was at all times in the possession of the Government, and by the exercise of due diligence could have been discovered by The Adjutant General who was charged with the duty of furnishing the Retiring Board with all official health records of the officer in question. We pointed out in Monks et al., Executors v. United States, 79 Ct.Cl. 302, 340, that it has long been the established rule of this court that proceedings will not be reopened on the ground of newly discovered evidence where due diligence on the part of the defendant would have brought it to light during the initial proceedings, and that this is especially true where the alleged new evidence would not produce any change in the result. Accord, Child v. United States, 6 Ct.Cl. 44, 49.

Plaintiff's Veterans' Administration physical report of December 1940 contained in essence no information not already before

4. Army Regulation 605–250, supra, provides: "§ 3a. When an officer is ordered before a retiring board the Adjutant General will furnish, for consideration by the board, originals or certified copies of the complete medical history, and of all other official records affecting the health and physical condition of the officer."

5. In the Robertson case an attempt was made to use Veterans' Administration medical records in a hearing before a Retirement Review Board created by §

302(a) of the Servicemen's Readjustment Act of 1944, 58 Stat. 287, 59 Stat. 623, 38 U.S.C.A. § 693i(a). This Review Board was granted the same powers vested in and exercised by the board whose findings were being reviewed, and in addition was authorized to base its review on all available service records. The term "service records" was construed broadly enough by the United States Supreme Court to include these Veterans' Administration medical reports.

the Army Retiring Board. A diagnosis of hypertension was contained in the August 14, 1940, Army physical examination (finding 3), a copy of which was or should have been before the initial Retiring Board. A report of a subsequent Army physical examination revealed that the hypertension, *to the extent that it constituted a disqualification for active service,* had been removed. The Veterans' Administration physical examination followed the latter Army physical examination and, at most, it can only be said that it disclosed some residual hypertension. On plaintiff's final type physical by the Army medical officers a few months later, plaintiff was certified *as physically fit for extended active duty.* Presumably, all these reports were before the reconvened Retiring Board of April 5, 1945, and after considering this material, that Board reached the conclusion that the Veterans' Administration report of hypertension, in December 1940, was not new evidence of such a nature as to require a reversal of the prior finding of service-connected disability.

Under the circumstances of this case, I am of the opinion that the results of the Veterans' Administration examination, in December 1940, did not constitute newly discovered evidence of a nature sufficient to justify the Disability Review Board (finding 16) in reversing the Retirement Board's finding that plaintiff's disability from which he was suffering at the time of his retirement was an incident of the service.

The evidence presented during the initial retirement proceedings contained ample grounds for the Retirement Board's findings that plaintiff's disability, as revealed by the first Army physical examination, had been removed prior to his entry into the service, and the disability from which he was suffering in 1944, originated while he was in active service.

There is no evidence in the record that plaintiff was guilty of making any fraudulent misrepresentations to the initial board. Plaintiff had adequate reason to believe from the Army medical examinations on December 13, 1940, and March 24, 1941, that his hypertension had been alleviated at least to the extent that he was fit for active duty on March 24, 1941, and he was therefore justified in stating to the first Retiring Board that he had experienced no trouble prior to his entry on active duty in 1941.

The majority opinion appears to assume that a mistake was made in connection with the first decision and certification for retirement by the Secretary of War, although defendant does not raise this point, but instead limits itself to the contention that the Veterans' Administration physical reports did constitute sufficient new evidence to warrant reopening the proceedings. The majority opinion states, "The doctrine that a decision, though made by mistake, is irrevocable * * *, is a strong doctrine," and proceeds on the theory that the Regulation in question would make such a decision irrevocable under all circumstances and in all cases. I do not understand the Regulation to so hold. As we pointed out above in connection with Haas v. United States, supra, an executive officer *may* reopen a decison made while acting in a quasi-judicial capacity upon a showing of manifest error. Such a decision may also be reopened and changed upon a showing of fraud, newly discovered evidence, or mathematical miscalculation. These four exceptions to the finality of a quasi-judicial decision of the sort here involved, vitiates the objection that section 36b "hardens the arteries of administrative procedure." However, as indicated above, I do not agree that the original decision of the Secretary of War was reached under circumstances which would justify the application of any of these four exceptions. In so holding, we would not be substituting the court's judgment for the Secretary of War's judgment as to whether or not the disability was service-connected, but rather intending, under the facts and circumstances, to give the original decision of the Retirement Board and the Secretary of War the finality provided for by the applicable Army Regulation, as to Reserve officers as well as to Regular officers.

Nor do I think that these conclusions are in conflict with the decision in Henry v. Marshall, supra. The District Court stated

that the question propounded for its decision was: " * * * whether, after the President approves the proceeding of an Army Retiring Board granting retirement pay to an officer (other than an officer of the Regular Army) for physical disability, and the subsequent certification of retirement pay by the War Department, such order for retirement pay may be revoked and rescinded *on the ground of newly* discovered evidence as to service connection, and the case re-referred to the appropriate board for further action." [Emphasis added.]

The court answered this question in the affirmative, relying, as I have, upon the decisions in the McBlair and Haas cases, supra, and to that extent I quite agree with the opinion. However, I do not agree with nor feel bound by *dicta* expressed by the District Court to the effect that the doctrine of exhaustion of power is inapplicable to retirement proceedings involving Reserve officers, and that such retirement "orders may be reversed, positions changed, and command revoked." Such a conclusion may be reached only through the process of judicial legislation.

I cannot concur with a statement expressed in the majority opinion herein to the effect that, "whether the disability which requires the retirement of a Regular Army officer is, or is not, service-connected, he is entitled to retired pay. He has made the Army his career and, when he is no longer able to actively follow that career, he is entitled to be maintained by the Army." This conclusion does not appear to accord with Section 1245 of the Revised Statutes, 10 U.S.C.A. § 931, which provides as follows: "When any officer has become incapable of performing the duties of his office, he shall be either retired from active service, or wholly retired from the service, by the President, as hereinafter provided."

Section 1251 of the Revised Statutes, 10 U.S.C.A. § 933, provides that where the disability is service-connected, the officer shall "be retired from active service and placed on the list of retired officers." To be retired from active service means retired with pay. R.S. § 1274, 10 U.S.C.A. § 971; Denby v. Berry, 263 U.S. 29, 35, 44 S.Ct. 74, 68 L.Ed. 148; Brown v. United States, 113 U.S. 568, 572, 5 S.Ct. 648, 28 L.Ed. 1079. But, where the disability is not an incident of the service, the officer shall be "retired from active service, or wholly retired from the service, as the President may determine." To be *wholly retired* means to be removed from the service entirely, and to become a civilian, with the right to receive *one year's* pay and allowances. R.S. §§ 1252, 1275, 10 U.S.C.A. §§ 934, 984; Denby v. Berry, supra; Miller v. United States, 19 Ct.Cl. 338, 353; cf. Hamrick v. United States, 96 F.Supp. 940, 120 Ct.Cl. 17. Thus the Government is not obligated to care for Regular Army officers with non-service connected disabilities.

It is my conclusion that by virtue of the Army's own regulation, orders retiring officers, Regular and Reserve, are final, except where the decision has been reached by virtue of fraud, manifest error, or mathematical miscalculation, or where there is newly discovered evidence of sufficient probative value to raise a reasonable and substantial doubt as to the correctness of the prior findings, which evidence was unknown and could not have been discovered earlier through the exercise of due diligence. In the instant case the plaintiff was not guilty of fraud, and neither the Retiring Board nor the Secretary of War committed a manifest error in certifying plaintiff for a service-connected disability. The reports of the Veterans' Administration physical examinations could have been discovered by The Adjutant General and presented to the original Retiring Board had due diligence been exerted. They were actually before and were considered by the reconvened Retiring Board April 5, 1945. Hence, no justification existed for the action of the Secretary of War of May 14, 1945, in revoking plaintiff's certification for retirement pay, and the original order of January 12, 1945, should be treated as a final one.

Plaintiff should have judgment for the retired pay claimed.

HOWELL, Judge, concurs in the foregoing dissent.