Howell, Judge,
delivered the opinion of the court:
On January 7,1948, plaintiff enrolled as a Transportation Corps civilian marine employee of the War Department (Department of the Army) for service at any designated post of duty in the world for a period of one year, by an Agreement of Enrollment supplemental to his appointment as an employee of the government under Civil Service Eules, Schedule A-IV-3, 5 C. F. E., 1947 Supp., § 6.4 (iii). This Schedule reads as follows:
Sec. 6.4. Lists of 'positions excepted from the competitive service — (a) Schedule A. — The following positions are those excepted from the competitive service to which appointments may be made without examination by the Commission, and constitute Schedule A of the Civil Service Eules:
* $ $ $ $
(4) War Department
* $ $ $ H:
(iii) Transportation Corps: Longshoremen and stevedores employed at ports of embarkation in the United States; and all positions on vessels operated by the Transportation Corps.
This Agreement was outside the classified Civil Service and conferred upon plaintiff an “excepted schedule” status. However, it was recited in the Agreement that plaintiff was entitled to “applicable Civil Service rights, privileges, and benefits thereunder, including special benefits applicable to marine employees of the War Department as may be prescribed in Marine Personel regulations from time to time.” Under this Agreement plaintiff was subject to the Civil Service retirement system and deductions were made from his salary for retirement purposes.
*585 As an incident to this enrollment, plaintiff also received on January 7,1948, an appointment to the position of Second Officer (Island Service) in the Transportation Corps with headquarters at Marbo, Guam, LST, 1009, at a salary of $3,660 per annum plus available allowances. Thereafter, on February 5,1948, plaintiff was promoted to First Officer “D” (temporary) at a salary of $4,552 per annum plus allowances.
On August 23,1948, while on duty as First Officer on LST 742 which was then docked at the 52nd Medium Port in Manila, Philippine Islands, plaintiff was informed that two members of the ship’s complement had been apprehended by the Provost Marshal at the Port for possessing blasting caps. The Provost Marshal instructed plaintiff to locate a third crew member who was also implicated and absent without leave at the time and return him to the Provost Marshal’s office for questioning in connection with the theft.
The next day, August 24, 1948, the Provost Marshal told plaintiff to consider himself under arrest because information obtained from the two crew members previously apprehended and a report from the Criminal Investigation Division Officer had implicated plaintiff in the transportation and disposition of approximately 36,000 blasting caps stolen from the Naval Ammunition dump at Guam. Plaintiff was restricted[1] to the Maritime Personnel Camp at Manila pending an investigation of his connection with the theft. The military authorities at Manila decided to hold plaintiff for trial by court-martial in accordance with the procedure outlined in the Maritime Personnel Regulations and to charge him with violation of the 94th Article of War.
At the time of his apprehension, plaintiff requested counsel and the Provost Marshal informed him of his right to select only civilian counsel to represent him. The Provost Marshal informed plaintiff that he had no authority to appoint military counsel as that authority rested with the Commanding General of the Philippines who had general court-martial jurisdiction, and further stated that the de *586 fense counsel for the court-martial would be appointed by a specific order from the Commanding General. However, at no time during his confinement in Manila was plaintiff provided with military defense counsel.
On September 18, 1948, plaintiff was transferred to the Philippine Area Stockade and remained confined there until jurisdiction of his case was transferred from the Commanding General of the Philippine Command to the Naval Civil Government of Guam. By reason of the transfer of plaintiff’s case to Guam for trial of the offense of theft of blasting caps, the original plan to try plaintiff in Manila at an Army court-martial for violation of the 94th Article of War was never carried out.
On September 23, 1948, plaintiff was taken to Guam and turned over to the Naval Civil Government which kept him confined until September 29, 1948, when he was released on bail. On November 5,1948, an information was filed in the Island Court at the Guam Judiciary Department, Naval Government of Guam, against plaintiff and seven others, charging them with grand theft of $50,000 worth of blasting caps. Initially, bail was fixed at $10,000 but later was reduced to $500, which plaintiff was able to furnish. Thereupon, plaintiff was released but was restricted to the island. On January 3, 1949, plaintiff’s motion for acquittal was granted by the court and plaintiff was exonerated of all charges. He was freed on that date and reported for duty to the Transportation Corps at Guam.
During the period of plaintiff’s arrest and trial, from August 24, 1948, to January 3, 1949, inclusive, he received no pay from defendant. The nonpay status of plaintiff during this period was the result of his arrest on August 24, 1948 which kept him from performing his duties despite his willingness to do so. The only written notice given to plaintiff after his arrest and before acquittal as to such non-pay status was embodied in a Notification of Personnel Action dated October 2,1948. Previously, on September 29, upon making bail, plaintiff attempted to draw his pay but for the first time was orally informed that he was then in a nonpay status. The Notification of Personnel Action did *587 not set forth any charge which had been placed against plaintiff but merely put him in a nonpay status.
When the plaintiff reported for duty to the Transportation Corps at Guam upon his acquittal on January 3, 1949, he was restored to pay status commencing on that date. Thereafter, plaintiff requested pay for the period of his suspension from August 24, 1948, to January 3, 1949, inclusive, by letter addressed to the Office of the Chief of Transportation, United States Army, Washington, D. C., which request was denied. On January 31, 1949, plaintiff’s services were terminated at the convenience of the government, his contract having expired. His termination was on a basis whereby he was eligible to be rehired.
It is plaintiff’s contention that he is entitled to pay for the period of his suspension from the date of his arrest to the date of his reinstatement as an employee of the War Department Transportation Corps under the Agreement of Enrollment which provided that the plaintiff was entitled to applicable Civil Service rights, privileges and benefits, or in the alternative that such suspension constituted a breach of contract on the part of the defendant.
Section 6 of the Act of August 24, 1912, 37 Stat. 555, as amended by the Act of June 10, 1948, 62 Stat. 354, 5 U. S. C. (Supp. Y) § 652, which is relied upon by plaintiff, provides:
(a) No person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service and for reasons given in writing. Any person whose removal or suspension without pay is sought shall (!) have notice of the same and of any charges preferred against him; (2) be furnished with a copy of such chai’ges; (3) be allowed a reasonable time for filing a written answer to such charges, with affidavits; and (4) be furnished at the earliest practicable date with a written decision on such answer. No examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer or employee directing the removal or suspension without pay. Copies of the charges, the notice of hearing, the answer, the reasons for removal or suspension without pay, and the order of removal or suspension without pay shall be made a part of the records of the proper *588 department or agency, as shall also the reasons for reduction in grade or compensation; and copies of the same shall be furnished, upon request, to the person affected and to the Civil Service Commission. This subsection shall apply to a person within the purview of section 863 of this title, only if he so elects.
(b) (1) Any person removed or suspended without pay under subsection (a) who, after filing a written answer to the charges as provided under such subsection or after any further appeal to proper authority after receipt of an adverse decision on the answer, is reinstated or restored to duty on the ground that such removal or suspension was unjustified or unwarranted, shall be paid compensation at the rate received on the date of such removal or suspension, for the period for which he received no compensation with respect to the position from which he was removed or suspended, less any amounts earned by him through other employment during such period, and shall for all purposes except the accumulation of leave be deemed to have rendered service during such period. A decision with respect to any appeal to proper authority under this paragraph shall be made at the earliest practicable date.
This court has had occasion to consider the provisions of Section 652 as applied to suspensions or dismissals arising out of loyalty tests in recent cases. Mendez v. United States, 119 C. Cls. 345; Lezin v. United States, 120 C. Cls. 724; Jackson v. United States, 121 C. Cls. 405. In these cases the court concluded that persons in the classified Civil Service and veterans are entitled to compensation in accordance with the provisions of subsections (b) (1) and (b) (2) in the event that grounds for doubting their loyalty are found to be unwarranted. In the Mendez case, supra, at page 349, we said with respect to the intended coverage of the Act:
* * * The purpose of the statute in question was to protect classified Civil Service employees from loss of pay if, upon the final decision on appeal on the charges preferred, it should be found that the grounds upon which such employee was suspended were not justified or warranted.
Plaintiff in this case, as did plaintiff in Brown v. United States, 122 C. Cls. 361, bases his recovery upon the provisions of Section 652 (b) (1), supra.
*589 In the Brown case we pointed out that the Act of 1948 supra, was designated as an amendment to the origina] Lloyd-LaFollette Act, supra, which had been clearly confined in its application to federal employees within the classified Civil Service. We concluded that the literal meaning of the language used in the amending Act of 1948 was sufiicient to destroy any contention that Congress intended to enlarge the application of those provisions to include excepted schedule employees. We also had occasion to consider the interpretation placed upon the Act by Congress in the course of hearings on the bill and noted that representatives of the Department of the Army and of the Civil Service Commission had urged the House Committee on Post Office and Civil Service to enlarge the scope of the bill to include personnel holding excepted positions. However, in the report by the conference committee of both Houses, H. E. 2011, 80th Congress, 2d Session, it was plainly revealed that Congress intended to provide by this amendment compensation for only classified Civil Service employees during periods of improper separation from government service.
The term “classified Civil Service” is defined by the Act of March 27,1922,42 Stat. 470, 5 U. S. C. § 679, as follows:
§ 679. The expression “classified civil service” as the same occurs in acts of Congress shall, unless otherwise provided, be construed to include all persons who have been or may be given a competitive status in the classified civil service, with or without competitive examination, by legislative enactment, or under the civil service rules promulgated by the President, or by Executive orders covering groups of employees with their positions into the competitive classified service or authorizing the appointment of individuals to positions within such service. [Italics supplied.]
In Bailey v. Richardson, 182 F. 2d 46, 52, aff’d. per curiam 841 U. S. 918, it was held that in order to qualify as a classified Civil Service employee an individual must have competitive status and occupy a classified position in the executive branch of the government. Since plaintiff was appointed under Schedule A-IV-3 of Civil Service Eule VI to a position expressly “excepted” from a competitive status by the Civil *590 Service rules, it is obvious that he did not have a position within the “classified Civil Service” as defined by Section 679, supra. Accordingly, he does not fall within the scope of those employees entitled to relief under the provisions of 5 U. S. C. (Supp. V) § 652 (b) (1), supra.
In addition, plaintiff is not entitled to relief independent of the provisions of Section 652 (b) (1). Plaintiff’s arrest by the military officials constituted grounds for suspension for reasonable cause and this court has held that reinstatement upon clearance of charges based upon reasonable cause does not entitle excepted schedule government employees to pay during the period of suspension when no work was performed. Brown v. United States, supra; Ginn v. United States, 110 C. Cls. 637, citing Eberlein v. United States, 257 U. S. 82, 84, affirming, 53 C. Cls. 466.
Plaintiff’s alternative contention is that defendant’s refusal to pay him for the period of his suspension constitutes a breach of contract on the part of defendant. By the Agreement of Enrollment, plaintiff consented to abide by the rules, regulations, customs and discipline of the service, and further agreed that if the government should at any time determine he had breached the rules, regulations, customs and discipline thereby being unable to carry out his assigned duties by reason of misconduct, he could be disenrolled at the pleasure of the government. As soon as the Transportation Corps headquarters at Guam learned of plaintiff’s arrest, he was summarily suspended. Under the circumstances this action constituted a proper exercise of administrative discretion. Bailey v. Richardson, supra. Furthermore, Army Kegulation 35-3960, dated August 21, 1942, was in effect August, 1948 and regulates the pay of civilian employees of the War Department (Department of the Army) during suspensions.^ Under this Kegulation, a Civil Service employee may be furloughed without pay by the department concerned at any time. The Kegulation further provides that where an employee has been suspended from duty while charges of misconduct are being investigated, pay for the period of suspension during which no services are rendered is forfeited unless the order of suspension provides otherwise. This Kegulation has the force and effect of law. Cravens v. *591 United States, No. 49374, decided April 8, 1952; Spencer v. United States, 121 C. Cls. 558, 567; cf. Transportation Corps Marine Personnel Regulation (November 5, 1948) §164-2 (b).
In final answer to plaintiff’s contention that the Agreement of Enrollment constituted a contract on the part of the government to pay him for the entire period of his enrollment, we observe that the War Department (Department of the Army) in the absence of an applicable statute had no power to bind the government to compensate plaintiff for the period of his suspension.- Congress is the only body under Our Constitution with the authority to consent to the assumption of liability by the United States or authorize others to do so.
In the absence of congressional authorization, this court is powerless to impose such liability. Utah Power and Light Company v. United States, 243 U. S. 389; The Seminole Nation v. United States, 102 C. Cls. 565, 623; Brown v. United States, supra.
Plaintiff is not entitled to recover and his petition is therefore dismissed.
It is so ordered.
Madden, Judge; Whitaker, Judge; LittletoN, Judge; and Jones, Chief Judge, concur.

 As explained by defendant’s witness, the Provost Marshal, “confined” is a restriction of an individual to a place of maximum security under armed guard while “restriction” is the limiting of the activities of an individual to a Port Area or building without armed guard.