**Hunter Louis GIRAULT**
v.
**The UNITED STATES.**
**No. 50474.**

United States Court of Claims.
April 5, 1955.

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger & Harmel, Washington, D. C., were on the briefs.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen., Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff sues for the retired pay allowed him by the Secretary of War on review of the action of the Retiring Board. This action of the Secretary of War was later rescinded by him and plaintiff was denied further retired pay.

Plaintiff says that once the Secretary of War had put him on the retired list, he was without power to revoke his action and deny him further retired pay. He also says that the subsequent action of the Retiring Board holding that the cause of his incapacity was not an incident of the service and the action of the Secretary of War in approving it was arbitrary, and for this reason may be set aside by this court.

On or shortly after May 26, 1944, the Army Retiring Board found that plaintiff was incapacitated for active service by reason of arteriosclerosis and arterial hypertension, but that these maladies were not an incident of the service.

At plaintiff's request the Retiring Board was later reconvened to hear additional testimony, but it adhered to its former findings.

Later, on June 17, 1944, the Surgeon General recommended to the Adjutant General that the Retiring Board reconsider its findings. It did so, and adhered to its former findings.

The Surgeon General recommended disapproval thereof because he said there was no evidence of arterial hypertension before the officer had entered the service, and, hence, it must have been an incident of the service. This recommendation was approved by the Secretary of War, and plaintiff's name was certified to the Veterans' Administration for retirement pay of $215.62 per month.

About 2 months later, the Veterans' Administration forwarded to the Adjutant General a copy of a letter plaintiff's wife had written the Veterans' Administration in 1940, prior to plaintiff's commission. This letter is set out in full in finding 24, but, since it is practically determinative of the case, it is repeated here:

"New Orleans, La.
"*December 9th, 1940.*
"U. S. Veterans Bureau,
"New Orleans, La.
"Reference:  *Hunter L. Girault,*
*File C–7*
"Gentlemen:

I hereby submit the following statement regarding my knowledge of the disabilities of Captain Hunter L. Girault, which statement is in answer to your letter of 12–6–40:

"I was notified by the War Department that Captain Girault has been severely wounded in action in October 1918. Later in December 1918 I visited him several times in the hospitals at Camp Merritt, N. J., and also Ft. Logan H. Roots, Ark. I noticed the marked difference in his weight, he having lost about fifty (50) pounds since I had last seen him in July 1918, and he seemed to be suffering from a serious lung condition and was wearing dark, heavy glasses, due to the effects of gas in his eyes and lungs.

"While stationed at Camp Pike, Ark., Captain Girault lived in my mother's home in Little Rock, Ark., and during February 1921 he had a serious case of pneumonia. Later he was moved by ambulance to the Post Hospital at Camp Pike, Ark. I visited him almost daily during his stay at the hospital at Camp Pike and was told by the doctors and Captain Girault himself, that he was running a daily temperature.

"During April 1921, Captain Girault was moved to the Fitzsimons Gen'l Hospital at Denver, Col., where

he remained several months. I visited Denver, and called many times to see him while he was a patient there, and for a long time his condition seemed unchanged.

"After leaving Fitzsimons Hospital, he never seemed to regain his strength, and showed unusual fatigue, following only moderate exertion. Owing to the insistence of his family and the advice of his family physician, he resigned his commission in the army. I do not recall the dates, but to my certain knowledge he was twice advised by our family physician to arrange his affairs, so that he might have regular rest periods, and in the early part of 1938 he disposed of his business.

"Accepting a position in August 1939 he was forced to give up this work, because he did not feel physically able to fulfill the duties required. He would return from his work exhausted, and lie down immediately, until meal-time, seldom arising on Sundays until late afternoon, and he constantly complained of being unable to get enough breath.

"Since the early part of this year (1940) he has done no work, and has spent practically his entire time at home in continuous rest, the members of his family contributing to his support. During the past few months, although his condition has shown improvement, he still complains of a shortness of breath, and brief spells of dizziness, especially upon arising from bed in the morning, or when leaning forward.

[s] Mrs. J. B. Girault.

"Subscribed and sworn to before me, by Mrs. J. B. Girault this 9 day of December, 1940, at New Orleans, Louisiana, parish of Orleans.

"[s] illegible."

The report of the physical examination of plaintiff made by the Veterans' Administration in 1941 reveals the following:

"Heart condition—have had shortness of breath for past year anyway; subject to chest colds—had 'flu' a couple of times during the winter for past three years.

\*   \*   \*   \*   \*   \*

"Dr. French (deceased), Little Rock, Ark., treated me 4 or 5 years after discharge from Army in 1925. Treated me chiefly by rest measures. No medical treatment to speak of since 1930.

"Occupation—No specific one. For ten years after discharge ran a trucking company in Little Rock. In 1938 sold business—average monthly income around $250.00 a month. In 1939 obtained work as life insurance salesman—salary $25.00 a week. Quit May 1940, because I couldn't keep up work—was played out. At present temporarily employed at U. S. Government Warehouse helping in receiving department, monthly pay $100.00 a month.

"I get tired out too easily. After several days working, get a headache (occipital) and will often have a little fever. This will last a couple of days. Have tried to change glasses but this doesn't seem to make much difference. When I bend over, I get dizzy. If I walk real fast, I breathe fast but still don't feel like I am getting enough air. One night following hot bath I had to sit up most of the night to get my breath. Have pains here and there in my chest. Chest colds hang on. Take cold easily. Gradual loss of weight over a period of two or three years. No history of G. I. complaints. I don't smoke or use alcoholics to excess. Have had puffiness under eyes for past year. Seldom miss having nocturia—1 to 3 times a night."

Upon receipt of these letters the Retiring Board was reconvened. These documents were introduced in evidence and further medical testimony was received, which showed the plaintiff "suffered from an inconstant hypertension prior to service and that his disability, number two,

namely, the hypertension, is not service connected," and that plaintiff had an early hypertension developing prior to his entry in the service and "there had been no permanent aggravation of this chronic progressive condition, and it was a natural course of the disease."

The Board found that plaintiff was incapacitated for active service and that his incapacity was not an incident of the service. This finding was approved by the Surgeon General and the Adjutant General and by the Secretary of War's Disability Review Board.

In Spencer v. United States, 102 F.Supp. 774, 121 Ct.Cl. 558, certiorari denied 344 U.S. 828, 73 S.Ct. 29, 97 L.Ed. 644, and in Carlin v. United States, 100 F.Supp. 451, 121 Ct.Cl. 643, we held that the action of a Retiring Board might be reconsidered on the ground of newly discovered evidence, mistake of law, mathematical miscalculation, or fraud. We think the letter of plaintiff's wife to the Veterans' Administration, and the statements made by plaintiff at the time of his physical examination by the Veterans' Administration were "substantial new evidence," forming sufficient ground for reconsideration of the case by the Retiring Board. They put an entirely new light on the case, sufficient for the Surgeon General and his superiors to reverse themselves. Prior to the introduction of this letter and plaintiff's statement to the Veterans' Administration, there had been no evidence of hypertension prior to plaintiff's commission. These documents at least tended to show that plaintiff had suffered from hypertension and arteriosclerosis before his commission. The Retiring Board held that they did show that he suffered from these diseases before his commission.

We are bound by these findings unless they were arbitrary. We have been struck with the great care exercised by the Army in this case to do justice to this officer. There is not the slightest evidence of arbitrary action.

It results that plaintiff's petition must be dismissed. It is so ordered.

JONES, C. J., and LARAMORE, MADDEN and LITTLETON, JJ., concur.