Weld on, J.,
delivered the opinion of the court:
The claimant was appointed first lieutenant in the Army on the 14th day of May, 1861, and in September, 1863, was examined by a retiring board organized under the provisions of the act of August 3,1861. Said board made the following report, as the result of its examination :
“After mature deliberation and careful consideration of his case, the Board find that First Lieutenant J. H. McBlair jr. Fifteenth United States Infantry is incapacitated for active service, and that his incapacity does not result from any incident of the service, and the Board recommend that he be wholly retired from the service with one year’s pay and allowance.”
And thereupon the President on the 6th of October, A. D. 1863, directed
“That he be wholly retired from the service with one year’s pay and allowance and that his name be henceforward omitted from the Army Register.”
November 28, 1863, the President during the recess of the Senate promoted William H. Heilman first lieutenant, to take effect from the 3d day of October vice McBlair retired. December 31, 1863, the President nominated said Heilman to be first lieutenant from October 3,1863, vice McBlair retired.
April 8, 1864 the President revoked the order made on the 6th of October, 1863, and directed that the claimant be placed on the “ retired list as of the date at which he was dropped.” On the 9th of April the name of the claimant was placed on the “ retired list” of that class in which the disability results from long and faithful service, or some injury incident thereto, to date October 6,1863.
On the' 1st of July, 1864, the President issued to Heilman a commission as first lieutenant, to rank from the 3d day of October, 1863, he having been confirmed by the Senate on the 18th of April, 1864. Since April 8,1864 the claimant has been borne on the retired list of the Army as first lieutenant. From May 1,1864 to 1870 he was detailed to perform active duty in the Commissary and Freedmen’s Bureaus.
The above statement of facts presents, the substance of the claim, as made by the findings of the court: and although cases almost identical, have been decided at the present term, it may not be unprofitable to present further considerations, in support *537 of tlie conclusions of law reached in this and former adjudications. We are called upon in this claim, to determine the power of the President, over the record of a case, in which he has approved, the finding of a -retiring board, by wholly retiring the officer from the Army, and the nomination and appointment of his successor.
We may approach the decision of the question presented by this record, without the apprehension, that there is danger of an invasion of the Constitutional prerogative of the President, to command the Army, and without the fear, that the effect of any decision we may render, can in any just sense interfere with the efficiency of the Executive, in the administration of his office, in the regulation of the Army of the United States.
The right of the President to command armies, and direct the minutest movement of the soldier, is very different from the exercise of the power of appointment of a person, by which the higher function of war is performed, through the instrumentality of officers of the Army. The power of appointment in the military service is not incident to the President as an exclusive power of his office, but is subject to the advice and consent of the Senate, so that in its exercise, there is called into requisition other volitions than the mere will of the President.
Article II, section 2, of the Constitution provides,
“ The President, shall with the advice and consent of the Senate, appoint the officers designated by the Constitution, and all other officers whose appoiniments are not herein provided for, but Congress may vest, in the President alone the appointment of such inferior officers as they think proper.”'
Congress have- not by law, vested in the President, the appointment of such officers as the claimant. The source of power is not the President alone, but the President and the Senate acting in concert of purpose
Having determined that the power of appointment in the Army, is not .incident'to the President, except in the discharge of a quasi civil function, we next inquire what is the source of his jurisdiction over the relations of an officer to the Army, and his right to determine the question as to whether an officer is to be kept in the Army, placed on the retired list, or wholly retired from the service. The last'two conditions or relations are the subjects of statutory law, they are created by express enactment, are not incident to the officer as a mere soldier, and *538 the President in dealing with such relations, is in the adjustment of rights wholly dependent upon the letter of positive enactment.
The retiring b.oard upon whose report the President acted is provided for in chapter 2 of The Army entitled “ Retirement” Revised Statutes, p. 218, Section 1252 of that act provides :
“■When the Board finds that an officer is incapacitated for active service and that his incapacity is not the result of an incident of the service, and its decision is approved by the President, the officer shall be retired from active service, or wholly retired from the service, as the President may determine.
“ The name of the officer wholly retired from the service shall be omitted from the Army Register.”
It will be seen by reference to section 1250 of the foregoing statute that the report of the Board is to be laid before the President “ for his approval and orders in the case.”
Finding 4 clearly indicates, that the report of the board was placed before the President for his personal inspection and adjudication. He says on “ review ” of the case the President not being satisfied. The phraseology of the order shows that the President had simply changed his mind, upon the sufficiency of the evidence to establish the fact that the disease was not incident to the service.
The order of the 8th of April, 1864, revoking the order of the 6th of October, 1863, retiring claimant from the Army was not to correct a mistake of fact, but to correct an error of judgment, the President might have made, in approving the recommendation of a board against the weight of evidence.
By finding 2 the board “ after mature deliberation and consideration ” found the claimant “ incapacitated for active service ” and recommended that “he be wholly retired from the service with one year’s pay and allowance.”
Upon the report of the board the President had the right to adopt one of three courses with the claimant; he could disapprove the finding and thereby retain the claimant in the active service, retire him from active service, or wholly retire him from the Army, as he might determine. He had a power to exercise in the disposition of the report, and his action thereon, made in law, the'complete exercise of the full measure of authority provided by the statute. It is not a continuing power, but is performed to the extent of its existence by the one act of the President.
*539 “ As a general rule where the law confers a power, and the person on whom it is conferred acts under it, the power is exhausted, unless the same authority authorizes its subsequent exercise. (The People v. Town of Waynesville, 88 Ill., 470.)
“ Whenever a naked power is given to a public officer to do a single particular act in a single defined case, it may be laid down as an axiomatic rule that when the act is once done the power is exhausted.” Runkle's Case (ante).
As was said by the court in ex parte Randolph (2 Brocken-brough, 473, 474):
“ I take it to be a sound principle, that when a special tribunal is created, with limited power, a,nd a particular jurisdiction, that whenever the power is once executed, the j urisdiction is exhausted and at an end — that the person thus invested with power is, in the language of the law, functus officio.
*******
“ Examples might be indefinitely multiplied; these are sufficient to illustrate, that whenever a special jurisdiction has once executed the power with which it was invested, their power is at an end, as to the subject in relation to which it has been executed.”
The President having exercised the power given to him by section 1250 of the statute by “wholly retiring” the claimant from the service, his condition from the legal effect of that act, became that of a private citizen — he was then, as though, he had never been connected with the Army.
“ Officers of the kind are nominated by the President and confirmed by the Senate; and if the petitioner ceased to be such an officer when notified that his resignation had been accepted, it requires no argument to show that nothing could reinstate him in the office short of a new nomination and confirmation. Prior to the act of the 13th of July, 1866, the President could dismiss an officer in the military or naval service without the concurrence of the Senate, but he never could nominate and appoint one without the advice and consent of the Senate, as required by the Constitution.” [Dubarry's Case, 4 Op. Att’y Gen., 603; 14 Stat., 92; Mimmack v. United States, U. S. R., 437.)
But it is insisted that the President must of necessity have control of the record, in order to correct mistakes which he might have made in acting without being sufficiently advised, and thereby insure to parties affected, a guarantee that injustice will not be done by hasty and inconsiderate action.
Courts, or officers, whether acting judicially or in a mere ministerial capacity, so long as they retain jurisdiction of a *540 subject-matter have complete control, within the purview of their power, to deal with it, as their discretion or duty may dictate; but when it passes beyond the line of official authority, either by the duty intrusted having been performed, or by the limitation of time, then the power ceases, and the mode of the execution becomes fixed and irrevocable in law.
It is a principle familiar to all, that a court once adjourned, ceases to have control of the substance of its decrees and judgments; and while matters of form may be corrected, matters of substance become crystallized into the force of judicial verity.
The finding of the board was placed before the President according to the requirements of the statute, the President approved it by wholly retiring the claimant from the service— not only that, but. months afterward he promoted William H. Heilman in qdace of claimant “retired” — and not only these acts, but on the 31st of December, 1863, he nominated Heilman first lieutenant in place of claimant “retired.” These acts following each other are no doubtful confirmation of the recommendation of the board, which in this case went further than the law required in the suggestion that the claimant be “ wholly retired.”
The retired list of the Army is regulated by positive law, being that form of just compensation, adopted by the policy of the government towards those, whose vigorous life is spent in the service of their country. Its regulation is necessarily very unlike the active branch of the service — one is power, the other is benefaction and gratitude. A code of written law may control one, but not the other.
It is therefore no degradation of the position of the President to say, through the forms of judicial construction in passing on his executive acts with reference to the retired list, that his power is regulated alone by acts of Congress. ' .
If the President has the right to change his approval into disapproval, when does the right cease? If it is incident to him because of his high office, and because of the very delicate and important functions inherent in him, as the head of the Army, those conditions continuing as they must indefinitely, his right is measured only by the life of the officer.
If the President has the right to revoke an order wholly retiring an officer, at any time and under all circumstances, then *541 he must have the correlative right to change an order, putting a person on the retired list to that of “ wholly retired.”
The right to review his own action, if it exist, must be subject to reasonable limitations.
It cannot be the exercise of a power dependent alone, on the will of the President. If it does exist and is governed by reasonable rules of limitation, we think to permit a change of the order, after approval, and two distinct recognitions of such approval would be an unreasonable exercise of the right of review.
As to the power of the President in a case like the one at bar, we cite the following: Mimmack’s Case (10 C. Cls. R., 584; 97 U. S., 437); McElrath (12 C. Cls. R., 201, affirmed 102 U. S., 426); Blake’s Case (14 C. Cls. R., 462, affirmed 103 U. S., 227; 17 C. Cls. R., 344); Miller’s Case (ante); Montgomery’s Case (ante); Bennett’s Case (ante); Palen’s Case (ante); Runkle’s Case (ante).
The retired list is of comparatively recent origin; and for years the Army endured through peace and survived in war, efficient in the hands of the President for the maintenance of national honor, and the due enforcement of the law, without the existence of the retired list, so the regulation of that department of the service can in no wise interfere with the constitutional right and power of the President as commander-in-chief of the military forces of the United States.
While the President is made commander-in-chief by the Constitution, Congress have the right to legislate for the Army, not impairing his efficiency as such commander-in-chief, and when a law is passed for the regulation of the Army, having that constitutional qualification, he becomes as to that law an •executive officer, and is limited in the discharge of his duty by the statute.
The department of the service called “retirement” is the creation of the statute, and he who claims right in it, must depend for the measure of his claim, on the terms of the law, and such reasonable construction, as may be justified by the intent and purpose of the legislature.
If injustice has been done the petitioner he must seek that forum which is controlled alone by the Constitution. Courts must apply law as they find it.
*542 As to the counter-claim of the defendants we have said in the case of Miller (ante):
“We therefore hold for the purposes of this case, that he who through the official act of the President of the United States, occupies an office, under the government, is subjected to all the disqualifications of such office, performs all its duties, aud is paid the emoluments thereof, cannot be required to return those emoluments to the government, though the President’s act may have been in reality unlawful and void, and may after-wards be so adjudged by a court having jurisdiction of the question.”
In accordance with what we believe the law to be, as announced by the Supreme Court in similar cases, and following the precedent of cases decided at the present term, it is the judgment of the court, that the claim aud counter-claim, be dismissed.