agreed upon. Appellant's requested finding on this reads as follows:

"The reappraisements that were made by the Secretary of the Interior upon applications of individual homesteaders and transferees were made without any consideration being given by the Department of the Interior to, and without regard for, the ability or the obligation of the applicant to pay the original appraisal price."

Appellant in support of the alleged error of the Commission in not making this requested finding, points only to the fact that the applications for reappraisal requested no information as to the ability of the entrymen to pay the original purchase price, but it points to no evidence to show that this was not, in fact, given consideration in determining whether or not a reappraisal should be made.

By this we do not mean to say that a reversal would be required even if the proof did show that some reappraisals were made where the entryman was able to pay the price originally agreed upon, if it clearly appeared that a gross error had been made in the original appraisal. It may have been "good business" for the United States in such case to have adjusted the appraisal, so as not to work an unconscionable hardship upon the entrymen. It may have been "good business" looking at it from the standpoint of the Indians. We do not think that the United States in its duty as guardian was obliged to enforce an unconscionable bargain.

Appellant cites the failure of the Commission to make other findings, but we do not think they require discussion.

On the whole, the Commission's findings present the case adequately. From the findings, we think it rather clearly appears that defendant in making these reappraisals was careful to protect the interests of the Indians; out of 4,046 applications for reappraisals, only 264 applications were granted. So far as appears from the record, we think that the defendant discharged its duty as guardian for its Indian wards faithfully and well.

The decision of the Indian Claims Commission is affirmed.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.

**John C. CAMPBELL**

v.

**The UNITED STATES.**

**No. 512-52.**

United States Court of Claims.
June 7, 1955.

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger & Harmel, Washington, D. C., were on the brief.

Laurence H. Axman, New York City, with whom was Asst. Atty. Gen. Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiff sues for his retirement pay as a major, U. S. Army, which was suspended while he was employed by the United States Government in a civilian position.

The issue in this case now before the court is whether the Secretary of War approved the Army Retiring Board's finding that plaintiff was disabled as a result of an explosion of an instrumentality of war in line of duty, thereby exempting plaintiff's retired pay from the provisions of section 212 of the Economy Act of 1932, 47 Stat. 406, as amended, 54 Stat. 761, 5 U.S.C.A. § 59a. We are of the opinion from the record that the Secretary of War approved this finding of its Army Retiring Board, and that plaintiff is entitled to his retirement pay.

Plaintiff served on active duty from April 24, 1942, to September 10, 1946. In 1944, plaintiff was in several bomb explosions while he was stationed in London and in April 1945, plaintiff, while on active duty in Bamberg, Germany, was near an ammunition train which exploded. The explosion blew plaintiff through a doorway against a brick wall. Thereafter plaintiff suffered from progressive deafness. Plaintiff was hospitalized as a result of this injury from the explosion for about nine months, first in France, then at Torney, Hammond and Letterman General Hospitals. On March 2, 1946, a Disposition Board at Letterman General Hospital found plaintiff permanently incapacitated for active duty by reason of deafness, but an Army Retiring Board at Letterman General Hospital found that plaintiff was not permanently incapacitated for active service. The Surgeon General did not concur in this finding. As a result of this nonconcurrence by the Surgeon General plaintiff again appeared before an Army Retiring Board. This Retiring Board found that plaintiff was permanently incapacitated for active service by reason of deafness and that the deafness resulted from an instrumentality of war in line of duty. The Secretary of War, acting through the Adjutant General, approved the finding of this Retiring Board and plaintiff was so notified by the Adjutant General on November 12, 1946. Plaintiff was relieved from active duty on September 10, 1946, and transferred to the Honorary Reserve on May 18, 1948.

Plaintiff accepted civilian employment with the United States Government on October 20, 1946, and continued in his position with the Government until June 1, 1954. Plaintiff's compensation from his Government position was in excess of $3,000 per annum.

Sometime after the receipt by plaintiff of the letter of November 12, 1946, from the Adjutant General, the Veterans' Administration notified plaintiff that his disability did not result from an explosion of an instrumentality of war in line of duty, and since his compensation was in excess of $3,000 per annum from Government employment, the provisions of section 212 of the Economy Act applied to the plaintiff. The Veterans' Administration cancelled plaintiff's retired pay. Plaintiff refunded the retired pay which he had received. After plaintiff's Government employment terminated, his retired pay was resumed.

Plaintiff contends that the Secretary of War, acting through the Adjutant General, approved the finding of the Army Retiring Board that he was disabled as a result of an explosion of an instrumentality of war in line of duty and that the Secretary of War was thereafter, in the absence of fraud or any other evidence, without authority to reverse this finding merely upon a revaluation of the existing evidence.

On the other hand, the Government contends that neither the Secretary of War nor the Army Retiring Board made a finding that plaintiff's disability was due to an explosion of an instrumentality of war. The Government also contends that the Secretary of War approved the Surgeon General's recommendation that plaintiff's disability was not the result of an explosion of an instrumentality of war.

The Economy Act of 1932, as amended, supra, provides that a person holding a civilian Government position shall not be entitled to retired pay from the United States if the total compensation from both sources is more than $3,000 per annum. This Act does not apply to retired pay if the disability for which retirement is granted resulted from an explosion of an instrumentality of war in line of duty. Plaintiff contends that he is within the exception of this Act and is, therefore, entitled to both his retired pay and his pay from the civilian Government position because his disability resulted from an explosion of an ammunition train and that the Secretary of War approved the Army Retiring Board's finding to this effect.

There is no question about the fact that the Army Retiring Board found that plaintiff's disability resulted from an explosion of an instrumentality of war. The Retiring Board was authorized to make such a finding. Section 46 (c) of the "Tentative War Department Technical Manual TM 12–245" provides as follows:

"Retiring Boards are authorized to make findings whether an individual's incapacity for active service was incurred in combat with an enemy of the United States or resulted from an explosion of an instrumentality of war in line of duty. Such findings will be set forth in Item 35 of WD AGO Form 199."

On WD AGO Form 199, under Item 35, the Board answered "Yes" to the question "Was officer's disability incurred in combat with an enemy of the U. S. or did it result from an instrumentality of war in line of duty?" This finding of the Army Retiring Board was supported fully by the evidence in the record before the Board. The evidence before the Board, including the unanimous testimony of five Army doctors who treated plaintiff and studied his medical record, showed that plaintiff suffered his disability as the result of an explosion of an ammunition train in Bamberg, Germany. Certainly an ammunition train is an instrumentality of war. But the Surgeon General, for some reason not disclosed by the record, did not concur in this finding of the Board, although he did agree with the Board in all of its other findings.

Plaintiff's record then went to the Secretary of War. He approved the finding and action of the Retiring Board. The statutes and regulations provide that the Secretary of War either approve or disapprove the findings of the Board. R.S. § 1250; 10 U.S.C.A. § 965; Par. 34(a) AR 605–250 (28 March 1944) provides as follows:

"The proceedings and decision of the board shall be transmitted to the Secretary of War, and shall be laid by him before the President for his approval or disapproval and orders in the case."

Executive Order 8461, 3 CFR, Cum. Supp. 680; 5 F.R. 2436, provides that—

"* * * in the administration of the retirement-pay provisions of the said statute [10 U.S.C. 456], the determination of all questions of eligibility for the benefits thereof, including all questions of law and fact relating to such eligibility, shall be made by the Secretary of War, or by someone designated by him in the War Department, in the manner, and in accordance with the standards, provided by law, or regulations for Regular Army personnel."

The Secretary of War does not approve or disapprove the recommendation of the Surgeon General. The Surgeon General's recommendation is used to guide the Secretary in his decision on the Board's findings. The Secretary's decision is on the findings of the Board and not on the Surgeon General's recommendation.

On November 12, 1946, the Adjutant General notified plaintiff that the War Department had approved the findings of the Army Retiring Board. Later some one in the War Department took the position that the Secretary of War did not approve the finding that plaintiff's disability was the result of an instrumentality of war because Item 35 of WD AGO Form 199 was not a part of the findings which were approved by the War Department.

The position of the defendant cannot be sustained. The Adjutant General, acting for the Secretary of War, approved the finding of the Board that plaintiff's disability resulted from an explosion. The Board was authorized to make this finding. The determination of the Army Retiring Board, approved by the Adjutant General, acting for the Secretary of War, that plaintiff was physically incapacitated for active service resulting from the explosion of an instrumentality of war in line of duty is final and can be reopened only upon a showing of mistake of law, manifest error, fraud, mathematical miscalculation and subsequently newly discovered evidence of sufficient probative value to raise a reasonable doubt as to prior findings. The findings of a Retiring Board, once approved by the Secretary of War, cannot be changed because of a mere revaluation of the existing evidence. The orders of the Secretary of War are final when he acts in a quasi-judicial capacity. If the rule were otherwise, deserving officers would find their retired status subject to periodic re-examination upon changes in Executive or Army administrations, or upon decreases in appropriations.

In United States v. Burchard, 125 U. S. 176, 8 S.Ct. 832, 31 L.Ed. 662, the Supreme Court held that once the findings of a Retiring Board had been approved, they were no longer open to review because the President's action on the findings was equivalent to a judgment of an appropriate tribunal which could not be disturbed. Cf. Potts v. United States, 125 U.S. 173, 8 S.Ct. 830, 31 L.Ed. 661. Also this court has held in McBlair v. United States, 19 Ct.Cl. 528; Spencer v. United States, 102 F.Supp. 774, 121 Ct.Cl. 558 and Carlin v. United States, 100 F.Supp. 451, 121 Ct.Cl. 643, that the findings of a Retiring Board, once approved by the Secretary of War, cannot be changed upon a mere revaluation of the existing evidence. When the Adjutant General took the position that plaintiff's retired pay was subject to section 212 of the Economy Act, supra, without

having before him any new evidence of substantial probative value or any evidence of fraud, he exceeded his authority.

We conclude that plaintiff is entitled to recover. Entry of judgment will be suspended until the filing of a stipulation by the parties showing the correct amount due in accordance with this opinion.

It is so ordered.

LARAMORE, Judge, and JONES, Chief Judge, concur.

WHITAKER, Judge (concurring).

The formal notice from the Adjutant General's office, dated November 12, 1946, stated that "the War Department has concurred in the findings of the Board * * *." That means to me that it concurred in all of the findings of the Board, which includes its finding that this officer had been disabled as the result of an explosion of an instrumentality of war. The later action of the Adjutant General, taken on January 6, 1947, notifying the Administrator of Veterans' Affairs that "the disability on which retirement is based was not incurred in combat with an enemy of the United States and was not the result of an explosion of an instrumentality of war"—this action seems to me to be inconsistent with the action taken on November 12, 1946. But the action taken on November 12, 1946, was the action of the Adjutant General, acting for the Secretary of War, on the findings of the Retiring Board determining the rights to which plaintiff in this suit was entitled. While the letter to the Administrator of Veterans' Affairs of January 6, 1947, is inconsistent therewith nevertheless it is not a determination of the rights of the officer. That determination was on November 12, 1946, and it is that determination that I think is binding.

For this reason I concur.

MADDEN, Judge (dissenting).

I do not agree with the court's decision. I think the court should not have reversed the finding of our commissioner that:

"The approval of the Secretary of War included only those findings of the Board that the plaintiff was incapacitated for service and that his incapacity was incident to the service and that he was entitled to retirement."

The Secretary's approval was, of of course, the approval of the Adjutant General, acting for the Secretary. The paper which the Adjutant General had before him, and signed, contained item 35, the Retiring Board's finding that the plaintiff's disability was incurred in combat with an enemy or resulted from an instrumentality of war. But it also included item 36, which contained the Surgeon General's express statement that the plaintiff's disability was:

"3. *Not* combat incurred or result of explosion of instrumentality of war * * *."

The arrangement of the form shows that the Surgeon General's action was to follow that of the Retiring Board. Then came the action of the Secretary, done by the Adjutant General. In a hierarchy, as the document proceeds toward the "summit," with differences of opinion shown in the lower stages, approval without qualification at the top cannot mean that everything on the paper is approved. It means that the recommendation of the next lower stage is approved. The notice sent to the plaintiff by the Adjutant General on November 12 is entirely consistent with this conclusion. It said that the Department had concurred in the findings of the Board that:

"found you to be permanently incapacitated for general military service as the result of an incident of your commissioned service."

It further said that the plaintiff would be certified to the Veterans' Administration for retired pay. It did not say that the Department had concurred in the finding of the Board that the plaintiff's

disability was incurred in combat, or resulted from an explosion of an instrumentality of war.

The action of the Adjutant General within a few weeks after the sending of the notice to the plaintiff shows that he did not intend, by his approval, to approve item 35 of the Retiring Board's findings. On January 6, 1947, in advising the Administrator of Veterans' Affairs of the status of retired officers, he certified that the plaintiff's disability was contracted in line of duty but was not incurred in combat with the enemy, and was not the result of an explosion of an instrumentality of war.

I think the case does not involve at all the question of whether the Secretary of War, having made a decision in favor of an officer, may change that decision. Here the paper on which the decision was stamped, the notice sent to the plaintiff, and the contemporaneous conduct of the officer who made the decision are all consistent with each other, and lead me to the conclusion that the Secretary of War never approved item 35 of the Retiring Board's findings.

I think that the plaintiff's most plausible argument is that it was arbitrary and capricious for the Adjutant General to conclude that the plaintiff's deafness was incidental to his military service, but was not the result of an explosion of an instrumentality of war. From the history of the plaintiff's deafness, both questions might have been answered in the negative, or both might have been answered in the affirmative. There was inconsistency in the answers recommended by the Surgeon General, and approved by the Adjutant General for the Secretary. If to be inconsistent is to be capricious, I cannot tell whether the capricious act was an act of generosity in answering the first question in favor of the plaintiff, or an act of meanness in answering the second question against him. In that situation I would be in doubt as to whether a court-imposed consistency would be a move in the direction of justice, or away from it.

UNION PACIFIC RAILROAD COMPANY

v.

The UNITED STATES.

No. 48579.

United States Court of Claims.
June 7, 1955.

See also, 101 F.Supp. 78, 121 Ct.Cl. 463.

