Collins, Judge,
delivered the opinion of the court:
On October 6, 1953, plaintiff was released from active military service by reason of physical disability. In this *626 suit be seeks to recover disability retirement pay in lieu of tbe longevity retirement pay to which he is otherwise entitled (and which he has been receiving since October 1, 1958). Contending that the circumstances attendant to his case establish his claim as a “continuing” one, he has accordingly limited his request for disability retirement pay to the 6-year period immediately preceding the filing of this action (i.e., from September 28, 1959). The Government’s defense rejects denomination of the claim as “continuous”; it bases its position on the fact that plaintiff’s claim was presented to, and rejected by, the Army Board for Correction of Military Becords more than 6 years prior to the commencement of tins suit and argues therefore that the suit must now be dismissed for lack of timeliness.
In the case of Lerner v. United States, 168 Ct. Cl. 247 (1964), and in Barnes v. United States, 163 Ct. Cl. 821 (1963), this court recognized that an administrative determination of unfitness for military duty, having once received the approval of the Secretary of the Army, was thereafter barred from further reevaluation save on grounds of substantial new evidence. The present claim fits squarely within that principle; we rely upon it here to grant judgment to plaintiff.
Extensive factual recitation is unnecessary. It is sufficient to point out that, at the time of his discharge for unfitness, plaintiff was suffering from a degenerative joint disease, then rated at 20 percent disabling and acknowledged to be “service connected.” Within 2 weeks after his release from military service (i.e., on October 19, 1953), he was admitted to the Veterans Administration Hospital in Manchester, New Hampshire, to receive treatment for a condition there diagnosed as chronic, severe, ulcerative colitis. Hospitalization was continued for a 2-month period. It was during this time that plaintiff first undertook to secure the reevaluation of his retirement status. By letter dated November 12, 1953, addressed to the Secretary of the Army, plaintiff requested reconsideration of his disability status, emphasizing, in particular, his post-discharge hospitalization.
Plaintiff’s request was turned over to the Adjutant General and, on January 7, 1954, he in turn referred the matter *627 to the Army Physical Disability Appeal Board (hereinafter the Appeal Board). The Adjutant General’s communication stated, in part:
2. In accordance with established policy, the attached correspondence [referring to plaintiff’s communication of November 12, 1953] is forwarded for determination as to whether the clinical record (TAB B) is “substantial new evidence”. If the determination is in the affirmative, i.e. “Substantial new evidence”, it is requested that this case be reconsidered.
After a review of the relevant records, the Appeal Board concluded:
After further reconsideration, the Army Physical Disability Appeal Board finds that there is no record of physical examination on separation in October 1953. M/Sgt Wason was separated 6 October 1953 and admitted to VA Hospital (Manchester) 19 October 1953 diagnosed as ulcerative colitis. There is a reasonable doubt that the colitis existed at time of separation. Therefore, doubt is resolved in favor of the individual. Another rating of 10% under Code #7323 is warranted. This combined with rating of 20% under VA Code 5003 warrants a rating of 30%.
[Responding to the Appeal Board’s determination, the Adjutant General took immediate steps to secure for plaintiff the retirement pay to which his increased disability rating now entitled him.[1] In a communication submitted to the Judge Advocate General (under the subject heading “[Reconsideration of approved PEB findings”), advice was requested concerning the legality of administratively revoking plaintiff’s original separation so as thereafter to permit the issuance of retirement orders. The Judge Advocate General replied that, while plaintiff’s earlier separation could not legally be revoked,
* * * Wason may be allowed to reenlist in the [Regular Army with a waiver for physical disability and *628 thereafter may be processed for physical disability retirement on the basis of disabilities incurred during his prior term of enlistment. * * *
However, because of the Surgeon General’s view that a waiver could not be issued in light of plaintiff’s prior physical unfitness discharge, the Judge Advocate General’s recommendation was not followed. Instead, plaintiff was advised to proceed by way of the Army Board for Correction of Military Records (hereinafter the Correction Board). Accordingly, on April 29, 1954, plaintiff submitted to the Correction Board a request “to show my separation to have been due to disabilities, 80% or more in extent, incurred in line of duty, while entitled to receive basic pay and certified as eligible to receive retirement pay effective 7 October 1953.”
For reasons which the record does not disclose, but perhaps because of its possible unawareness of the Appeal Board’s redetermination (increasing plaintiff’s disability to 30 percent), the Correction Board undertook to reexamine plaintiff’s claim in its entirety. To this end, plaintiff was requested to appear for a medical examination at Walter Reed Army Hospital. This examination confirmed the existence of plaintiff’s previously diagnosed bone disease, but noted no additional physical disabilities. On the basis of this examination, plus the comprehensive medical abstract simultaneously prepared, the Correction Board determined, on March 18, 1959, that “insufficient evidence has been presented to indicate probable material error or injustice.” Accordingly, plaintiff was advised on April 18, 1959, that his application had been denied.
In its defense to this claim, the Government has argued that the lapse of more than 6 years between the Correction Board’s action (noted above) and the commencement of this suit requires us to dismiss the action for lack of timeliness.[2] As applied to the facts of this case, that position is not only legally incorrect insofar as the issue of timeliness is con *629 cerned, but is an inappropriate defense to the claim as a whole.
We pointed out in Friedman v. United States, 159 Ct. Cl. 1, 310 F. 2d 381 (1962), cert. denied, 373 U.S. 932 (1963), that action by a Correction Board marks the accrual point of a claim only in those cases where there has been no prior final determination by a proper board. “Once a final decision is had, the claim accrues, the limitations period begins to run, and there is no tolling of the statute by reason of further applications to other boards or agencies (including the Correction Board).” Friedman, supra at 24, 310 F. 2d at 396. Thus, in this case, if the timeliness of plaintiff’s claim were to be the dispositive factor, it is clear that the statute of limitations would be measured not from the date of the Correction Board’s action (i.e., April 18,1959), but rather from the date that the Appeal Board rendered its favorable determination (i.e., January 21, 1964). Friedman, supra at 14, 16, 310 F. 2d at 390, 391. But aside from the question as to which board’s action should be considered decisive in marking the accrual point of plaintiff’s claim, the Government’s reliance upon the Correction Board’s action is defective in a more fundamental sense. Under our view of the facts, it was not open to the Correction Board to reverse plaintiff’s previously determined, and approved, right to disability retirement pay.
It was noted in Lerner v. United States, supra at 254, that the prerequisite for entitlement to disability retirement is the “approval by the Secretary of a retiring board’s finding of service-caused incapacity.” In addition, it was pointed out that, under the authority of Campbell v. United States, 132 Ct. Cl. 122, 132 F. Supp. 225 (1955), a retiring board’s findings, once approved, were not subject to reversal except on grounds of fraud, mistake, or new evidence. In other words, the reevaluation of old evidence, which served as the predicate for the Correction Board’s action in this case, could result in a valid redetermination of plaintiff’s right to retirement pay only if the Appeal Board’s findings had not been approved. In this case, the Appeal Board’s findings were *630 approved by the Secretary of the Army. Our authority for this conclusion rests upon the relevant Army regulations.
AR 15-160 (dated August 20,1953), which defines the respective functions of the various boards, commissions, and committees processing cases under Title IV of the Career Compensation Act of 1949, states, with respect to the functions of the Adjutant General that he:
* * * takes action for the Secretary of the Army by separating, placing on the temporary disability retired list, or permanently retiring for physical disability a member in accordance with applicable regulations, principles, and rules established by the Secretary of the Army, provided—
a. Such action is in conformity with the findings of the Council in a case not requiring action by the Appeal Board, or
b. Such action is in conformity with the findings of the Appeal Board.
* * Í: * M:
15. Disposition of certain other cases. — The Adjutant General will take the necessary administrative action required for the disposition of cases where action other then [sic] separation, placement on the temporary disability retired list, or permanent retirement for physical disability has been indicated by the Council, the Appeal Board, or the Secretary of the Army.
The above regulations, as we read them, incorporate two essential considerations :• First, the recognition of finality that attaches to administratively determined findings of fact and, secondly, the need for executive discretion in those situations where other than routine disposition has been indicated by an administrative board. These considerations not only determine, but likewise limit, the avenues open to the Adjutant General in his disposition of “career compensation” claims. Thus, only in those situations where “action other than separation, placement on the temporary disability retired list, or permanent retirement for disability has been indicated by the Council, the Appeal Board, or the Secretary of the Army,” is the Adjutant General authorized to exercise discretion in his disposition of a claim. (Emphasis added.) *631 But in cases like the present, where there has been a final determination of permanent physical disability by a proper board (here the Appeal Board), the Adjutant General is directed to take action “m conformity with the findings of the Appeal Board.” (Emphasis supplied.) Accordingly, it was not open to the Adjutant General either to withhold action on plaintiff’s claim or to initiate action contrary to the findings established by the Appeal Board. And, as the facts show, the Adjutant General did attempt to implement the Appeal Board’s findings.
However, because the special circumstances of plaintiff’s case apparently precluded the possibility of his being placed directly into the disability retirement pay category, recourse to the Correction Board became necessary. But that fact (¿.<3., the necessity for this administrative action by the Correction Board) could not operate to extinguish the approval otherwise manifested through the Adjutant General’s prior conduct; neither could that fact furnish a ground upon which the Correction Board could legally undertake to reexamine and reverse the Appeal Board’s findings. The Appeal Board’s findings, coupled with the Adjutant General’s required actions, gave rise to a final determination of disability and should have been treated as such by the Correction Board. All that was called for at this final juncture was a correction of plaintiff’s records — not a reevaluation of his claim. Similarly, it was not open to the Adjutant General to reverse his earlier position and thereafter place his approval upon the Correction Board’s action. Having once given his approval to the Appeal Board’s findings, those findings were subject to reversal only if new evidence had been introduced before the Correction Board. That was not the situation in this case.
From this it follows that plaintiff’s present claim is based upon a right already established. That right is appropriately designated as a “continuing claim,” Barnes v. United States, supra, and, as such, it allows plaintiff to recover all sums due thereunder that have accrued within the 6 years prior to the filing of this action, subject, of course, to any lawful offsets the Government may have.
*632 For'the reasons stated, defendant’s motion for summary judgment is denied, and plaintiff’s cross-motion for summary judgment is granted. Judgment is entered for plaintiff with the amount of recovery reserved for further proceedings pursuant to Rule 47(c).
In accordance with the opinion of the court and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on September 1, 1967, that, judgment for the plaintiff be entered for $22,634.36.

 Entitlement to disability retirement pay under the provisions of § 402 of the Career Compensation Act of 1949, ch. 681, 63 Stat. 816, as amended, 10 U.S.C. §1201 (1964) (formerly 37 U.S.C. §272), was predicated, inter alia, upon the disability being “at least 30 percent under the standard schedule of rating disabilities in use by the Veterans’ Administration at the time of the determination.”

 28 U.S.C. §2501 (1964), which sets out the controlling statute of limitations, provides:
“Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is tiled within six years after such claim first accrues.’’