Davis, Judge,
concurring in the result:
I join in the judgment on the ground the court rejects. As I understand the Army regulation on relief of reserve officers from active duty for inefficiency (Keserve Components— Eelief of Officers 'and Warrant Officers from Active Duty, Dept, of the Army, AE 135-178, paras. 50, 51, Dec. 5,1958.), it provides for an annual screening instituted by Army headquarters, not for repeated screenings within one year at the instance and option of that headquarters. Para. 50. Commanding officers, on the other hand, can make recommendations for relief at any time within the year if they feel that some specific incident or course of incidents requires elimination before the time of the next annual screening (at headquarters’ instance), and those commanders’ recommendations will be reviewed at once. Para. 51. This division of 'authority makes sense. The reserve officer can rest assured that, if his own commanders are satisfied with his work during the year, he need not fear repeated screenings during that period (on the ground of efficiency) at the instance of the personnel staff in the distant central headquarters which does not have first-hand knowledge of his work and may be intent on pursuing some theoretical personnel goals. But the officer’s own leaders, who are more likely to know of incidents or performance calling for immediate elimination of this particular officer, can still bring those matters to the attention of the final authority for consideration at once. Interpreted in this way the Army’s system for reserve officers is comparable, ■though by no means identical, to the method for dealing with inefficiency in the civil service. In the civilian area' the general performance ratings are usually made once a year, but an employee who has received a satisfactory grade at the last *106 annual rating can still be discharged, before the time for a new rating, for specific acts of incompetence. Angrisani v. United States, 172 Ct. Cl. 439, 444 (1965); DeBusk v. United States, 132 Ct. Cl. 790, 796-97 (1955), cert. denied, 350 U.S. 988 (1956) ; see Chisholm v. United States, 149 Ct. Cl. 8, 13 (1960).
In this case the plaintiff’s annual screening at the instance of Army headquarters — represented by the Career Branch of the Women’s Army Corps — took place on May 19, 1959, and the Active Duty Board declined to approve the revocation of her indefinite service agreement. The later request, on July 8, 1959, to eliminate plaintiff came from the personnel staff at headquarters, the same Career Branch of the WAC, not (so far as the record shows) from any of her own commanders. This request was therefore improper and unauthorized by the governing regulation (as I read that directive) unless it can be deemed a timely application by the Career Branch for reconsideration of the Active Duty Board’s decision on May 19th. Since this request came some seven weeks after the Board’s ruling, I consider it much beyond the “short period” after the making of a decision during which “it is the inherent right of every tribunal to reconsider its own decisions.” Dayley v. United States, 169 Ct. Cl. 305, 308 (1965). To allow as much time as this to elapse before a request for reconsideration is made would be to adopt the position which the court embraces and I reject, i.e. that headquarters can file successive petitions, within one year, to the Active Duty Board.
The result, in my view, is that plaintiff’s relief from active duty in the fall of 1959 was contrary to the regulation and of no effect. I do not have to consider the Active Duty Board’s decision of June 24, 1960, and the proceedings leading up to it, which become relevant only if the Board’s decision of July 16, 1959 (in response to the headquarters’ request of July 8th) is held valid. As for the Correction Board, the plaintiff was required to go there for relief onfy because of the Army’s own errors and misunderstandings. If the Active Duty Board’s decision of May 19, 1959, had been given its proper operation, plaintiff would not have *107 been relieved from duty and would liave bad no occasion to go to tbe Correction Board. That Board’s adverse determination should therefore be given no effect; the Army cannot bootstrap itself by erroneously compelling plaintiff to ask for Correction Board relief which is then denied.*
Laramore, Judge, joins in the foregoing concurring opinion.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner W. Ney Evans, and the briefs and argument of counsel, makes findings of fact as follows:
1. (a) Plaintiff enlisted in the Women’s Army Auxiliary Corps (WAAC; later WAC) in January 1943 and served on active duty as an enlisted woman from February 26,1943, to May 16, 1943, when she was honorably discharged to accept appointment (May 17,1943) as third officer. On September 1, 1943, she was given a temporary appointment as second lieutenant, AUS, advanced to first lieutenant on December 23, 1943, and to captain on October 5, 1944. She was relieved from active duty (by honorable separation) on November 14, 1949, in the grade of captain.
(b) On November 1,1950, she was recalled to active duty and in 1952 was promoted to major (AUS, temporary, August 6,1952; indefinite, USAS, October 14,1952).[1] Her category, effective November 1, 1956, was “indefinite.”
(c) As a major (WAC, AUS), plaintiff continued in service until relieved from active duty on October 19, 1959, under circumstances hereinafter described. She then enlisted in the Women’s Army Corps on January 14, 1960, and served on active duty as an enlisted woman until her release on August 31, 1964, to retire (effective September 1, *108 1964) in the grade of lieutenant colonel, after more tlian 20 years of service.
2. (a) On May 14, 1959, the Chief of the Career Branch, WAC, recommended to the Department of the Army Active Duty Board that plaintiff’s indefinite service agreement be revoked, on the ground that plaintiff had a mediocre efficiency record with several reprimands for reckless driving and indiscreet behavior in public places. By action on May 19, 1959, the Active Duty Board declined to approve the revocation of plaintiff’s indefinite service agreement.
(b) On July 8, 1959, the Chief of the Career Branch renewed the recommendation, requesting that approval be given by the Active Duty Board to the revocation of plaintiff’s indefinite service agreement, supporting the request with the advice that, in the light of efficiency reports prepared by plaintiff and subsequently received by her superiors, it appeared that she was not competent to evaluate the performance of her subordinates or that good officers had deteriorated tragically while working under her supervision. On July 16,1959, the Active Duty Board advised the Separation Branch of the Adjutant General’s Office that it had again considered plaintiff’s records and that, with a majority of the members concurring, plaintiff’s indefinite service agreement had been revoked.
(c) On July 20, 1959, plaintiff was notified by order of the Secretary of the Army that she had been selected for relief from duty under the provisions of AB, 135-215 and section XV, Alt135-173.
(d) The foregoing notice further advised plaintiff:
2. The primary consideration in retaining officers on active duty is to maintain maximum effectiveness in meeting military requirements. Your personnel file has been reviewed by the Department of the Army Active Duty Board. The Board determined that, when compared to your contemporaries, your manner of performance, professional qualifications, and experience do not warrant your further retention on active duty.
3. You will be relieved from active duty not later than 90 days after date of your receipt of this notification, under the provisions of Section XV, Alt 135-173 (SPN *109 704 or 705, as appropriate). Yon may, if you desire, request release at an earlier date. Such release is considered voluntary, however, and would therefore render you ineligible for readjustment pay if you are otherwise qualified.
3. (a) The pertinent provision of AB, 135-215 [2] follows:
b. * * * Officers, other than Obligated Officers, may be relieved from active duty for the following reasons: # * * * *
(4) Failure to meet acceptable standards of efficiency or conduct.
(b) The pertinent provision of AB 135-173 [3] follows:
50. General. The records of officers on active duty, less those serving on term category commitments, will be screened annually at Headquarters, Department of the Army, to determine those officers whose degree of efficiency and manner of performance of duty require relief from active duty or elimination from the service.
a. This screening process will be done at Headquarters, Department of the Army, the chiefs of arms and services based on annually prescribed guidance and criteria. The records of those officers recommended for relief from active duty will be referred to a board of officers for review and determination; the decision of the board will be final. * * *
#
51. Action by commanding officers. Commanders at all echelons will submit through channels to The Adjutant General, Department of the Army, Washington 25, D.C., ATTN: AGG-Z, the names of those officers whose manner of performance of duty when compared with their contemporaries indicates a lack of justification for retention on active duty. Such submissions may be made at any time and will be accompanied by details of the reasons for recommendation for relief. These recommendations will be processed in accordance with paragraph 50a.
*110 (c) By letter of January 27, 1959, the President of the Active Duty Board was informed by order of Wilbur M. Brucker, Secretary of the Army, concerning the duties of the board for that year. Included also was a statement of the criteria and guidelines to be used by the board during 1959 in evaluating the records of officers to determine whether they should be retained or relieved from active duty. The pertinent portions of that letter were as follows:
1. AT?. 135-173 requires that the records of Reserve Officers on active duty will be screened annually at Headquarters, Department of the Army by a board of officers to determine those officers whose degree of efficiency and manner of performance of duty warrant relief from active duty. AR. 135-215, as changed, requires selection of a limited number of highly qualified commissioned officers by Headquarters, Department of the A Tiny board action for voluntary retention on active duty beyond the date on which eligibility for retirement is established under Title 10, U.S. Code, Section 3911.
2. The Department of the Army Active Duty Board has been appointed by LO AGPA-0 DA Active Duty Bd (26 Jan 59), this office, 27 January 1959, subject: “Department of the Army Active Duty Board,” to perform these missions in calendar year 1959. To assist the board in performing its missions, the Chief, Officers Assignment Division, Office of The Adjutant General and Chiefs of the Career Branches of the arms and services are appointed as administrative assistants to the board. It is intended that detailed screening of records be accomplished for the board by these officers.
3. The Department of the Army Active Duty Board will consider, but will not be limited to, the following types of cases:
# í¡: sjs
d. Revocation of indefinite service agreements under the provisions of AR 135-173.
ijí ^ #
4. In a modern peacetime Army the standards for retention on active duty must be higher than the standards during periods of emergency or expansion. It is recognized that detailed criteria cannot be established but that the judgment and experience of members of the career branches and the board must be employed to in *111 sure that individuals selected for retention are those having the greatest potential. To achieve this aim the following points are submitted as guidance:
a. The weight to be given derogatory information must be determined by the collective judgment of the board. However, greatest weight should be given to the most recent years of service. Undue consideration should not be given to unfavorable comments which appear early in an officer’s career but which are followed by continuous satisfactory performance of duty.
b. The OEI will not be used as a basis for comparison between two individuals.
c. Due consideration should be given to the recommendations of career branch chiefs; however, each case will be considered on its individual merits.
5. The board findings for either retention or relief frorn active duty are final unless otherwise directed for particular type actions.
6. It cannot be overemphasized that the wide experience and good judgment of the members of the Department of the Army Active Duty Board must be depended upon to insure an effective, vigorous officer corps without jeopardizing the rights of individuals.
(d) A similar letter was sent to the President of the Active Duty Board on May 13, 1960, by order of the Secretary of the Army. The 1960 letter was substantially identical to the one sent in 1959, except that the guidelines to be used in screening officers were modified as follows:
4 * * x
a. The weight to be given derogatory information must be determined by the collective judgment of the board. However, greatest weight should be given to the most recent years of service. Undue consideration should not be given to unfavorable comments which appear early in an officer’s career but which are followed by continuous satisfactory performance of duty.
b. The OEI will not be used as a basis for comparison between two individuals.
c. “Adverse matter” that can be considered in personnel actions must be a part of official records. The Board must make sure that all information that is considered about an individual is qualified for such consideration under AB, 640-98.
_ d. In submitting cases for your review and determination as to retention or release from active duty, the chiefs *112 of the arms and services will not brief tbe board. Tlie review and a determination therefrom is the prerogative of the board based on qualified information in official records.
4. Plaintiff was relieved from active duty effective October 19,1959, in the grade of major, AUS, with honorable type of separation.
5. (a) On December 9, 1959, plaintiff wrote to the Adjutant General requesting “Reconsideration of Relief from Active Duty” and that she be “reinstated on extended active duty in * * * [her] prior grade of Major, AUS.”
(b) On January 14, 1960, she enlisted in the Regular Army.
(c) On May 14, 1960, while serving on active duty as an enlisted member, she again wrote to the Adjutant General requesting reinstatement as a major, AUS.
6. (a) On June 8, 1960, the Chief of the Career Branch, WAC, requested reconsideration by the Active Duty Board of its action of May 19,1959, wherein the Active Duty Board did not approve the recommendation of the Chief of the Career Branch that plaintiff’s indefinite service agreement be revoked.
(b) In support of this request for reconsideration the Chief of the Career Branch listed evidences of declining efficiency, lack of progress, and failure to heed admonitions; and attached items from plaintiff’s personnel data.[4]
(c) The foregoing request for reconsideration did not list (1) the action by the Active Duty Board of July 16, 1959 (revoking plaintiff’s indefinite service agreement); (2) plaintiff’s relief from active duty effective October 19, 1959; or (3) plaintiff’s enlistment in the Regular Army on J anuary 14, 1960.
(d) The evidence affords no explanation (1) of the reason for the request by the Chief of the Career Branch, on June 8, 1960, for reconsideration by the Active Duty Board of its *113 action of May 19,1959, or (2) of the purpose to be served by such reconsideration.
7. On June 24, 1960, the Recorder of the Active Duty Board notified the Chief of the Career Branch that the Board had reconsidered the records of plaintiff and, with a majority of the members concurring, “recommends her retention on active duty.”
8. On July 20,1960, the Adjutant General replied to plaintiff’s letters of December 9,1959, and May 14, 1960, stating, in pertinent part:
2. Upon your request, the circumstances surrounding your relief from active duty have been reviewed in the Department of the Army. There are no means by which the Department may reinstate you as a Major on active duty as of the date of your release therefrom on 19 October 1959, unless your records should be changed (upon your application) through action by the Army Board for Correction of Military Records to show that you were not released from active duty on that date. * * *
3. It is emphasized that advising you of your right to request a review by the above mentioned board in no way implies what action will be taken by the Board. Each case is considered in light of the full evidence presented and final determination is based on its individual merits.
4. The Deputy Chief of Staff for Personnel, Headquarters, Department of the Army, desires you be informed that his office will support your appeal to the above board.
9. (a) On August 2,1960, the Army Board for Correction of Military Records received plaintiff’s application for “Reinstatement as a Major on active duty in the Army of the United States.”[5]
(b) In her application plaintiff referred to her letters (1) of September 14,1959,[6] to the Department of the Army, with eight enclosures, requesting an investigation by the Inspector *114 General, and (2) of December 9, 1959,[7] to the Adjutant General requesting reconsideration of her relief from active duty. She further stated (i) that she relied on “such information and records [as] may be requested by your board from The Adjutant General,” and (ii) that she had no further evidence to offer “at this time.”
(c) In proceedings conducted on September 14, 1960, the Army Board for Correction of Military Eecords considered plaintiff’s application, the case summary prepared by its staff, and plaintiff’s 201 file and efficiency files. The board entered detailed findings from the case summary, many of which are reflected herein. Of particular note are the following:
f. that following another request for reconsideration of the previous action taken on applicant’s case, the Department of the Army Active Duty Board on 24 June 1960 reconsidered the record and with a majority of the members concurring, recommended applicant’s retention on active duty; that the Deputy Chief of Staff for Personnel advised The Adjutant General on 24 June 1960 to the effect that the Department of the: Army Active Duty Board’s recent action was a ruling in effect that applicant should not have been relieved from active duty as an officer in October 1959; that it was now appropriate to advise the applicant of the Department of the Army Active Duty Board’s decision in order that she might receive all pay and allowances as well as any other credit due her; that, in addition, applicant should be advised of her right to appeal to the Army Board for Correction of Military Eecords to effect a correction of her records to show that she was never relieved from active duty; and
g. that on 20 July 1960 the applicant was advised-that there were no means whereby she might be reinstated as a major on active duty as of the date of her *115 release on 19 October 1959 unless her records should be changed through action by the Correction Board to show she was not relieved from active duty on that date.
(d) The board concluded:
1. That the applicant’s record is replete with evidence attesting to incidents which prompted the necessary entries to be made therein, together with necessary reprimands resulting therefrom by her superiors.
2. That on the basis of applicant’s efficiency reports it would appear that the proper action was taken by the Department of the Army Active Duty Board in revoking applicant’s indefinite service agreement on 16 July 1959.
8. That in consideration of the foregoing findings and conclusions, there is no basis for correcting the applicant’s records as requested.
On the basis of the foregoing conclusions, the board recommended that plaintiff’s application for correction of military records be denied.
(e) On January 3, 1961, the Assistant Secretary of the Army (Manpower, Personnel and Reserve Forces) advised the Adjutant General of his approval of the findings, conclusions, and recommendation of the Army Board for Correction of Military Records and directed that plaintiff’s application for correction of military records “be, and hereby is, denied.”
(f) The Army Board for Correction of Military Records made no findings or conclusions concerning the following-issues : (1) whether the Active Duty Board had jurisdiction to reconsider plaintiff’s case upon the request of the Career Branch on June 8, 1960; (2) whether the action by the Active Duty Board on June 24, 1960, occurred an unreasonably long time after the rulings by that board on May 19, 1959, and July 16,1959.
10. (a) Under date of March 17, 1964, plaintiff filed another application with the Army Board for Correction of Military Records requesting that her records be corrected to show that she “was not released from active duty as a Major in the Army of the United States October 19, 1959.” The application contained requests (1) “that my representative *116 be permitted to submit a brief and other evidence following such time as my record has been made available to him for examination”; and (2) that she be permitted to appear before the board, represented by counsel, although she did not desire to present witnesses.
(b) The brief was subsequently submitted by the attorney who now appears as plaintiff’s attorney of record, and is a part of the record in this case.
11. On August 31,1961, plaintiff was discharged from enlisted status for retirement as an officer, in the grade of lieutenant colonel, USAR, and was, on September 1,1964, transferred to the Retired Reserves.
12. On February 2, 1965, plaintiff’s attorney was advised by the Executive Secretary of the Army Board for Correction of Military Records that inasmuch as there had not been introduced any newly discovered relevant evidence, “there is no basis upon which the Board may recommend to the Secretary of the Army that reconsideration be given the matter.” Plaintiff’s attorney was further advised:
It is not considered that the case cited in your brief [Friedman v. United States, 141 Ct. Cl. 239, 158 F. Supp. 364 (1958)] is comparable to the facts as presented in Juanita F. Biddle’s case, as it is noted a Department of the Army Active Duty Board, with a majority of the members concurring, recommended revocation of her indefinite service agreement while she was still on active duty. It followed that she was relieved from active duty in the grade of major, effective 19 October 1959. While the records show that a Department of the Army Active Duty Board later recommended her retention on active duty, such board was convened following her relief from active duty and was merely advisory in nature.
13. (a) Plaintiff seeks by this action to recover the difference between the active duty pay of a major with her length of service for the period October 19, 1959, to September 1, 1964, and the pay she has received as an enlisted person from January 14, 1960, to September 1, 1964.
(b) The evidence in this case consists only of documents appearing in plaintiff’s 201 file. No trial has been held. The documents were received in evidence at a pretrial con *117 ference. Upon, tbe closing of proof, requested findings of fact and briefs were filed by the parties.
CONCLUSION 0J? LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover the amount she would have received as a major with her length of service from October 19, 1959, until September 1, 1964, less the amount she received as an enlisted person from January 14, 1960, until September 1,1964. Judgment is entered for plaintiff accordingly, with the amount of recovery reserved for further proceedings pursuant to Buie 47 (c).

This court has consistently ruled that, where it should have been unnecessary under the law for the claimant to go to the Correction Board, that tribunal’s adverse determination may be disregarded (except for extraordinary circumstances). See Friedman v. United States, 141 Ct. Cl. 239, 252-54, 158 F. Supp. 364, 373-74 (1958) ; Morris v. United States, 163 Ct. Cl. 259, 260 (1963) ; Wason v. United States, 179 Ct. Cl. 623, 626, 631 (1967).

 She was promoted to lieutenant colonel, United States Army Reserve, on March 2, 1958, but was serving on active duty in the grade of major at the times material to these findings.

 Reserve Components — -Officer Periods of Service, AR 135 — 215, para. 7b, Dept. of the Army, May 27,1955.

 Reserve Components — Relief of Officers and Warrant Officers from Active Duty, AR 135-173, paras. 50 and 51, Headquarters, Dept. of the Army, Dec. 5, 1958. AR 135-215, para. 10c(l) contains a similar provision for the finality of board action.

 Among these items were (1) a showing that plaintiff’s OBI as of June 30, 1958, had fallen below the average for WAC officers of her grade and component, but (2) that she had received no promotion passovers.

 By letter dated August 1, 1960, from the Commanding Officer of the united States Army Recruiting Main Station, Atlanta, <to the Adjutant General, a statement in support of plaintiff’s application was submitted.

 This letter is not in evidence.

 This letter is in evidence. In it plaintiff referred to her “letter of 14 September 1959 to The Inspector General * * * in which * * * [she] requested an investigation * * The letter of December 9, 1959, continues, in pertinent part: “What seems * * * to be significant is that * * * whenever in the course of my military career I was stationed at an installation at which female personnel were in a minority, I received good efficiency reports from my superiors, and that my only serious difficulties in almost IT years of service were experienced at the single post in the Army where female personnel predominate.”